## *In re* Assessment and Collection of Taxes.

1.  Act March 9, 1891, entitled, "An act prescribing the mode of making assessments and the levy and collection of taxes and for other purposes in relation thereto," Section 18 provides: "Credits, How Listed and Assessed. Any person who is required to list credits, either for himself or for any other person, firm, or corporation, may deduct from the gross amount thereof the amount of all bona fide indebtedness of himself or of any such person, firm or corporation; but no acknowledgment of indebtedness, not founded on actual consideration to the full amount of such acknowledgment at the time when the same was given, and no acknowledgment made for the purpose of being so deducted, shall be considered a debt in the meaning of this section, and every person so claiming any deduction shall furnish the assessor with a list containing: First, the amount of all book accounts; second, the amount of all notes due him, and also a list of the amount of all book accounts owing

by him, and he shall be required to verify the same by oath administered by the assessor. Nothing in this section shall be so construced as to apply to any bank, banker, or corporation exercising banking powers or privileges. Provided, however, that any person, company or corporation, in making up the amount of personal property required to be listed for himself, company or corporations, shall be allowed to deduct from the gross amount thereof any indebtedness of himself, company or corporation, if the same be owned or held within this state; provided further, that grain held by the producer of the same actually sold or contracted to be sold, but not delivered, shall be classed as credits." *Held,* that such section-provides (1) that a person having credits is allowed to deduct therefrom all his indebtedness, whether owned or held within or without the state; (2) that a person having personal property presumably other than credits is allowed to deduct therefrom such indebtedness as is held or owned within the state; and (3) that grain held by the producer to be sold, but not delivered, shall be classed as credits.

2.   Const. Art. 11, § 2, provides that, "all taxes to be raised in this state shall be uniform on all real and personal property, according to its value in money, to be ascertained by such rules of appraisement and assessment as as may be prescribed by the legislature by general law, so that every person and corporation shall pay a tax in proportion to the valuation of his, her or its property. And the legislature shall provide by general law for the assessing and levying of taxes on all corporation property, as near as may be, by the same methods as are provided for assessing and levying of taxes on individual property." Section 4 provides that "the legislature shall provide for taxing all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise: and also for taxing the notes and bills discounted or purchased, moneys loaned, and all other property, effects or dues of every description, of all banks and of all bankers, so that all property employed in banking shall always be subject to a taxation equal to that imposed on the property of individuals." Section 5 provides specifically that public property shall be exempt without legislative action. Section 6 provides that the legislature, by general law, shall exempt property used for agricultural and horticultural societies, schools, religious, cemetery purposes, and personal property to any amount not exceeding in value $200 for each individual liable to taxation; and Section 7 declares that "all laws" exempting property from taxation other than that enumerated in Sections 5 and 6 of this article, "shall be void." *Held,* that Act March 9, 1891, § 18, in providing for the deduction of indebtedness from the amount of credits and personal property, and Section 19, prescribing what indebtedness should not be deducted and the manner of verification of deductions, while no provision is made for deducting

the same from the value of the real estate of tax payers, provide for unequal taxation, are in conflict with the constitution, and void.

3. Such sections of the revenue act also produce inequality and want of uniformity in taxation, and are unconstitutional, in that they permit the deduction from personal property of indebtedness held within the state but permit no deduction of indebtedness held without the state.

4. Assuming that the term "personal property," occurring in the first proviso of such Section 18, means only "credits," of which the section is primarily treating, the same want of uniformity and equality exists, in that the statute permits the deduction of indebtedness from one kind of personal property, "credits," and from no other.

5. Such deduction of indebtedness from credits and personal property is, also, in effect, an exemption from taxation of property in addition to the exemptions authorized by the constitution, and renders such statute void, though the statute speaks only of deductions, and not of exemption.

6. As such unconstitutional provisions can be separated from the remainder of the revenue act, the other provisions remain in force.

(Syllabus by the Court.    Opinion filed April 10, 1893.)

Advisory opinion of the supreme court, rendered at the request of the governor in relation to the interpretation of Sections 18 and 19 of an act approved March 9, 1891, entitled "An act prescribing the mode of making assessments and levy and collection of taxes, and for other purposes relative thereto;" and as to whether the provisions of such sections of the statute are in conflict with Article 11 of the constitution of the state.

SUPREME JUDGES' CHAMBERS,    }
PIERRE, S. D., May 12, 1891. }

*To his Excellency, Arthur C. Mellette, Governor of the State of South Dakota:*

SIR:   Your communication of date May 4, 1891, addressed to us, requesting our opinion under and by virtue of Section 13, Art. 5, of the constitution of the State of South Dakota, on certain matters submitted by you, has been received and considered, and we herewith most respectfully submit to you our opinion upon the questions submitted to us.

Your communication is as follows:

"EXECUTIVE OFFICE, PIERRE, S. D., May 4, 1891.
"*To the Honorable, the Judges of the Supreme Court of the State of South Dakota:*

"GENTLEMEN: The executive department of the state is seriously embarrassed by a manifest ambiguity in the meaning of Sections eighteen (18) and nineteen (19) of an 'Act of the legislature, approved March 9, 1891, entitled "An act prescribing the mode of making assessment and levy and collection of taxes, and for other purposes relative thereto," ' county officials insisting upon administering the law according to different interpretations, which, in so important a matter as providing the public revenue, cannot fail to work great injustice to the taxpayers of the state. Grave doubts are also suggested as to whether the provisions of the sections aforesaid are not in conflict with the provisions of Article 11 of the constitution, which provides that taxes on all species of property shall be uniform, and based upon real values, subject to certain defined exemptions. To avoid much confusion in the administrative department, and to promote justice, I therefore have the honor to hereby require the opinion of the judges of the supreme court upon the important questions of law involved in the exercise of executive powers arising under the statute hereinbefore specified, viz.: (1) Touching the question as to whether their provisions are in conflict with the constitution of the state, and therefore void. (2) If authoritative, what is their proper interpretation touching the deductions of indebtedness?

"I have the honor to be, Honorable Sirs, your very obedient servant,

 [Signed]      "A. C. MELLETTE,
         "Governor of South Dakota."

The two questions submitted will be considered in the order we find them in your communication. And, first, as to the constitutionality of the Sections 18 and 19 referred to: Sections 18 and 19 of the Revenue Law of 1891, entitled "An

act prescribing the mode of making assessments and the levy and collection of taxes, and for other purposes in relation thereto,'' approved March 9, 1891, are as follows: "Sec. 18. Credits, How Listed and Assessed. Any person who is required to list credits, either for himself or for any other person, firm, or corporation, may deduct from the gross amount thereof the amount of alll *bona fide* indebtedness of himself or of any such person, firm, or corporation; but no acknowledgment of indebtedness, not founded on actual consideration to the full amount of such acknowledgment at the time when the same was given, and no acknowledgment made for the purpose of being so deducted, shall be considered a debt in the meaning of this section, and every person so claiming any deductions shall furnish the assessor with a list containing: First. The amount of all book accounts. Second. The amount of all notes due him, and also a list of the amount of all book accounts owing by him, and he shall be required to verify the same by oath administered by the assessor. Nothing in this section shall be so construed as to apply to any bank, banker, or corporation exercising banking powers or privileges: *Provided, however,* that any person, company, or corporation, in making up the amount of personal property required to be listed for himself, company, or corporations, shall be allowed to deduct from the gross amount thereof any indebtedness of himself, company, or corporation, if the same be owned or held within this state. *Provided, further,* that grain held by the producer of the same, actually sold or contracted to be sold, but not delivered, shall be classed as credits. Sec. 19. What are Proper Deductions—Verifications of Deductions. No person, company, or corporation shall be entitled to any deductions on account of any bond, note, or obligation of any kind given to any mutual insurance company, nor on account of any unpaid subscription to or installment payable on the capital stock of any company, whether incorporated or unincorporated; and in all cases where deductions are claimed for

credits, the assessor shall require that such deductions be veri-
fied by oath of the person, officer, or agent claiming the same;
and any such person, officer, or agent knowingly or wilfully
making a fraudulent statement of such deductions shall be lia-
ble to a fine of not less than one hundred (100) dollars, nor
more than $1,000, in addition to all damages sustained by the
state, county, or other local corporation, to be recovered in any
proper form of action in any court of competent jurisdiction,
in the name of the State of South Dakota.''

The provisions of Section 18 are somewhat ambiguous, but
giving to them a liberal construction, and such as their lan-
guage seems to require, they provide (1) that a person having
credits is allowed to deduct therefrom all his indebtedness,
whether owned or held within or without the state; (2) that a
person having personal property, presumably other than cred-
its, is allowed to deduct therefrom such indebtedness as is held
or owned within the state; and (3) that grain held by the pro-
ducer of the same, actually sold or contracted to be sold, but
not delivered, shall be classed as credits. No provision is
made for deducting any indebtedness by a person not the owner
of credits or other personal property,—owners of real property
only not being entitled to any deductions whatever. Can the pro-
visions of these sections be sustained under Article 11 of the or-
ganic law of this state? The sections of this article bearing upon
this subject are 2, 4, 5, 6, and 7, and are as follows: ''Sec. 2. All
taxes to be raised in this state shall be uniform on all real and
personal property, according to its value in money, to be ascer-
tained by such rules of appraisement and assessment as may
be prescribed by the legislature by general law, so that every
person and corporation shall pay a tax in proportion to the
value of his, her, or its property. And the legislature shall
provide by general law for the assessing and levying of taxes
on all corporation property, as near as may be, by the same
methods as are provided for assessing and levying of taxes on
individual property.''  ''Sec. 4. The legislature shall provide

for taxing all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise; and also for taxing the notes and bills discounted or purchased, moneys loaned, and all other property, effects, or dues of every description, of all banks and of all bankers, so that all property employed in banking shall always be subject to a taxation equal to that imposed on the property of individuals. Sec. 5. The property of the United States and of the state, county, and municipal corporations, both real and personal, shall be exempt from taxation. Sec. 6. The legislature shall, by general law, exempt from taxation property used exclusively for agricultural and horticultural societies, for school, religious, cemetery, and charitable purposes, and personal property to any amount not exceeding in value two hundred dollars, for each individual liable to taxation. Sec. 7. All laws exempting property from taxation, other than that enumerated in Sections 5 and 6 of this article shall be void."

Two systems of taxation have had and now have their advocates. One is based upon the theory that a person should only be required to pay taxes on the value of his property left after deducting therefrom his *bona fide* indebtedness, thus in effect taxing him on what he may be worth over and above his indebtedness; and the other is based upon the theory that all property, real and personal, should bear the burden of taxation in proportion to its value, under a uniform system, without regard to the owners' indebtedness; that as all property is alike protected by the government, it should all alike contribute to the support of the government. The framers of our organic law seem to have adopted the latter system, and made all property within the state, whether real or personal, including credits, the basis of taxation. Article 11 of our constitution was evidently adopted upon this theory. As will be seen, Section 2 of that article declares that "all taxes to be raised in this state shall be uniform on all real and personal property according to its value in money," etc. Section 4 enjoins

upon the legislature the duty of providing for taxing "all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise." Section 5 designates specifically what property shall be exempt, without legislative action. Section 6 provides specifically what property the legislature shall by law exempt, and the maximum amount of exemption that shall be allowad to individuals, and Section 7 declares that all laws exempting property from taxation other than that enumerated in Sections 5 and 6 of the article, shall be void. It will thus be seen that the framers of the organic act have in most postive terms declared that "all taxes  *  *  *  shall be uniform on all real and personal property," and while, under ordinary circumstances, this language would have been sufficient to include all the personal property specified in Section 4, yet out of abundance of caution, and as if to leave no doubt of their intention, the framers of the constitution again in that section declare in positive terms "that the legislature shall provide for taxing all moneys, credits," etc. No deductions or exemptions are in any part of the article provided for, except the property of the public specified in Section 5, and property used for religious and other purposes, and personal property not to exceed $200 in value allowed to individuals, specified in Section 6. With these provisions of the organic law in view, let us examine Sections 18 and 19 of the revenue law, assuming, as before stated, that they are to be construed as the language of the sections seem to require they should be. As before noticed, the owner of real property who has no credits or other personal property is not allowed by these sections to deduct any of his indebtedness. He must pay on the full value of his real property. When, therefore, he is required to pay taxes on the full value of his property, while another who has personal property of the same value is permitted to deduct his indebtedness therefrom, leaving a part of his personal property untaxed, there exists an inequality and want of uniformity. One pays on all and the other on part only of his property.

Again, as between parties owning personal property, the law, it will be seen, is equally unfair, and produces inequality and want of uniformity in taxation. A., a merchant in a town, has a stock of merchandise, valued at $15,000, and no credits, but is indebted to the amount of $10,000 to parties without the state. He is entitled to no deductions, but must pay taxes on his whole $15,000 stock. B., is a merchant in the same town, has a stock of merchandise valued at the same amount, ($15,-000,) has no credits, is indebted in the same amount, ($10,000,) one-half of which is owned and held within the state and one-half without. He will, under the section, be entitled to deduct $5,000 of his indebtness; and therefore will be required to pay taxes on only $10,000, or two-thirds of his stock. C., a merchant in the same town, has a stock of merchandise of the same value, ($15,000,) has no credits, the same indebtedness, ($10,-000,) held and owned within this state. His indebtedness, under the section, can all be deducted, and he will be required to pay taxes only on $5,000, or one-third the value of his stock. Here, then, we have three merchants in the same town, with stocks of goods of equal value, and with identically the same indebtedness, paying respectively taxes on $15,000, $10,000, and $5,000, or, on the whole, two-thirds, and one-third, of their personal property. There can neither be uniformity nor equality under a law that may produce such results, and it must be evident that all property, real and personal, under such provisions, cannot be taxed, but only a part of the property of those most favored. But it is claimed that the term "personal property" occurring in the first proviso of Section 18 may fairly be taken to mean only that kind of personal property of which the section is primarily treating. The section is introduced by the words, "Credits, how listed and assessed;" and as these are the words of the legislature, and not, as in some instances, those of the compiler, they should be taken to indicate the controlling thought of the section, and to limit the operation of the entire section to the listing and assessing of

credits; and hence that, under the section, deductions can only be made, in any event, from credits, and not from other personal property.    While we cannot fully concur in this construction of the section, there is much plausibility in that theory, and in the claim that such was evidently the intention of the legislature.    But assuming this construction to be correct, we think the same want of uniformity and equality would result, if the section was to remain in force.    For example, A. has personal property of the value of $5,000, of which $2,500 is in the form of credits for money loaned, etc., and he is indebted $2,500.    He is allowed to deduct his indebtedness of $2,500 therefrom, and is required to pay taxes on only $2,500, or one-half of his personal property.    B. has personal property of the value of $5,000, none of which is credits, and he is indebted $2,500.    He cannot be allowed to deduct his indebtedness, and hence will be required to pay taxes on all his personal property, valued at $5,000.    Here, then, we see two individuals having identically the same amount of personal property and the same indebtedness,—one required to pay taxes on $5,000 and the other on $2,500.    One further illustration will suffice.    One farmer has $2,000 loaned on interest, and $1,000 in other personal property, and is indebted $2,000 on his farm.    He will be allowed to deduct the $2,000 indebtedness from his credits, and will only be required to pay taxes on his $1,000.    A neighboring farmer has personal property consisting of horses, cattle, etc., valued at $3,000, but no credits.    He is indebted $2,000 on his farm.    He cannot deduct his indebtedness, and hence is required to pay taxes on the whole value of his personal property, $3,000.    No system of taxation that is liable to produce such results can have the semblance of equality or uniformity.    It lacks every element of uniformity, and is unequal and unjust, and would tend to perpetuate the evils that existed under the old system that it was manifestly the aim of the framers of our organic act to guard against. We think, therefore, the provisions of these sections are in

conflict with Sections 2 and 4 of Article 11 of the constitution.

We are of the opinion, also, that the effect of Section 18, in question, is to exempt the property that may be deducted under the provisions of that section from taxation, and that the section is for that reason in conflict with the provisions of the organic act, and void. It is true the revenue law speaks only of deductions, but in our view deductions as specified in this section and exemptions are substantially the same thing—that the merely calling an exemption a "deduction" does not render the law any the less objectionable. The language of the organic act plainly declares that all property, real and personal, shall be taxed according to its value; and, except as therein provided, it is not within the power of the legislature to exempt any portion of it from taxation; and what it cannot do directly under the constitution, it cannot do indirectly. When the legislature therefore, attempts to so exempt personal property or credits, by calling it a "deduction," the law is as objectionable as though it had used the word "exemption" instead of "deduction." As before stated, under the sections of the revenue law we are considering, no deduction of indebtedness can be made from the value of real estate. But what reason can be urged for deducting indebtedness from credits or other personal property that does not equally apply to real property? The constitution makes ro such distinction between the different classes of property, except in the case of the $200 exemption to individuals. There is nothing in that instrument expressly authorizing such a deduction, and all of its implications are against it. It specifically provides what exemptions shall or may be made, and the deduction of indebtedness is not in terms or by implication embraced within these exemptions. The maxim "*expressio unius est exclusio alterius*," is directly applicable to this case. But it may be claimed that deductions are not exemptions, and that as the legislature is not prohibited from making deductions they are permissible, but as before stated, calling what is really an exception a deduction cannot change its character.

This was well stated by Judge Thurman in Bank v. Hines, 3 Ohio St. 1, when speaking of such a deduction. He says: "But what is the argument I am considering but a mere change of words? Is there anything of substance in it? What is the practical effect of allowing the deductions permitted by Section 10? Plainly to exempt just so much of the moneys and credits in the state from taxation. An individual has $1,000 in money and owes $600. He is taxed according to Section 10 only upon $400 of his money. The residue is exempted from taxation. If this can be done by merely calling an exemption a deduction, I know not where we are to stop. * * * It is the thing itself, I imagine, and not the name, that determines its validity." In this case, decided in Ohio under its amended constitution, containing provisions relating to taxation quite similar to those in our own organic act, the court held that a section in the revenue law of that state providing for deductions of indebtedness from moneys and credits was unconstitutional and void. Mr. Justice Bartley in delivering the opinion of the court, speaking of the provisions of the Ohio constitution, said: "An unequal and unjust system of taxation prevailing in this state was one of the most prominent causes of the call of the late constitutional convention, and of the adoption of the present state constitution. And in the formation and adoption of the constitution, the principle of taxation most just and equal in its operation was very fully discussed and considered. It was conceded on all hands that the levying of taxes by the poll was oppressive, and should be prohibited; and property was made the sole basis of taxation. It was contended, however, by some, and has been suggested in the investigation of this case, that, in adopting property as the sole basis of taxation, the most equitable rule would be to tax every person equally, not upon the value of all his property, but upon the amount which the value of all his property should exceed the amount of his indebtedness; in other words, upon the amount he would be worth over

and above the amount of his debts.    This was, however, found wholly impracticable.    In the complexity and various involutions of business and the infinite variety of form and condition in which property and indebtedness are found to exist, it would not be practicable to ascertain, with any degree of certainty, equality and fairness the amount of property which every person was worth, over and above his indebtedness. And taxation being the tribute for the support of government, in return for the protection and advantages received by the owner, it is but fair and just that the burden should be proportioned to the amount of property owned and secured by the protecting hand of the government, and not to the amount to which the value of a person's property exceeded the amount of his indebtedness."

In Railway v. Worthen, 46 Ark. 312, decided by the supreme court of Arkansas, under constitutional provisions quite similar to our own, a section of the revenue law of that state was held unconstitutional and void.    The legislature enacted a law for assessing and taxing railroads, in one section of which was the following clause:    "But such schedule [furnished by the railroad company] shall not include nor value embankments, tunnels, cuts, ties, tressels or bridges."    Mr. Justice Smith, in delivering the opinion of the court, says:    "The theory of our constitution is that the common burden shall be borne by common contributions.    All property is to be taxed according to its value.    'All' does not mean all the legislature may designate, or all except such as the legislature may exempt.    If this were so, the whole burden of taxation might be thrown upon land or upon any one species of property.    It means all private property, of every possible description, or all property other than that belonging to the state or the general government.    The legislature cannot discriminate between different classes of property in the imposition of taxes.    The only discretion with which it is invested is in the ascertainment of values, so as to make the same equal and uniform through-

out the state.    About  the  same  time  an action involving the
same question was brought in the United  States  circuit  court
for  that  circuit,  and  subsequently  appealed  to the supreme
court of the United States, and was decided in  connection with
the case above cited removed by writ of error to the state court
and is cited as Huntington v. Worthen, 120 U. S. 97, 7 Sup. Ct.
Rep. 469.    In delivering the opinion  of  the  court Mr. Justice
Field says:    ''The following property is declared  to be exempt
from taxation:    'Public  property  used  exclusively  for public
purposes; churches used as such; cemeteries  used  exclusively
as such; school buildings and apparatus; libraries and grounds
used  exclusively  for  school  purposes;  and  buildings and
grounds and materials used  exclusively  for  public  charity.'
And the constitution declares that 'all laws exempting property
from taxation other than is  provided' therein 'shall  be  void.'
As thus seen, no part of the property of  railroad companies in
the state is exempt from  taxation, and any law which  exempts
it is in express terms declared to be void.   .But  laws which in-
directly produce such  exemption  must be equally inoperative.
That cannot be accomplished  indirectly which the organic law
declares shall not be done directly.    The assessment of  prop-
erty—that is the appraisement and estimate of its value—is the
basis upon which the amount of the tax is fixed.    A law, there-
fore, omitting from assessment portions of any particular prop-
erty, thus lessening the estimate of  its  value, has the effect of
exempting it to that extent from taxation.    That  result cannot
be  accomplished,  as  well  observed  by  the supreme court of
the state, under the guise of  regulating  the  duties of  asses-
sors.''    In  Fox's Appeal, 4  Atl.  Rep. 149, 112 Pa. St. 337, de-
cided in 1886, a section of the revenue law of Pennsylvania was
held unconstitutional and void under .the provisions of the con-
stitution of that state, which are also  quite similar to our own.
The section of  the  statute  provided ''that  notes  or  bills  for
work or labor  done'' should  be exempt.    Mr. Justice Paxton
in delivering the opinion of the court, says:    ''The exception of

'Notes or bills for work or labor done' is clearly a violation of Article 9 of the constitution. This belongs to a species of class legislation that has become very common—more common than commendable—the object of which is to favor a particular class at the expense of the rest of the community. So far as such legislation affects the question of taxation the constitution has put an end to it. There can be no more of it; nor should there be. The constitution protects all classes alike. The rich and poor alike enjoy its benefits, and must share the burdens which it imposes. However popular such legislation may be, it cannot be sustained under our present constitution. But for this vice we are not required to declare the act of 1885 void. The second section of Article 9 of the constitution provides: 'All laws exempting property from taxation, other than the property above numerated, shall be void.' The exception of 'notes or bills for work or labor done,' is void under this provision, and drops out of the act of 1885. The exception falls, but the act stands. It will be the duty of the assessors to assess and return such bills or notes the same as other moneyed securities in the hands of individuals."

These cases illustrate the change made in the modern constitutions containing provisions similar to our own on the subject of taxation, and the reasons for the change, and also the importance of preserving these valuable provisions of the constitution from being frittered away under the guise of deductions, on the theory that deductions are not exemptions, and preventing the legislature from discriminating under various pretexts between different classes of property that shall bear the burdens of taxation. Why should the merchant or money loaner be allowed to deduct his indebtedness, while the farmer or mechanic, who may have no credits or personal property, be required to pay taxes on the full value of his property? What peculiar merit has the individual who has credits or personal property, that he should have the privilege of deducting his indebtedness, while the owner of real estate only is denied the

same privilege? Unequal and unjust taxation cannot under our organic act be permitted. Equality, justice and uniformity is the command of that instrument in all matters of taxation. Discrimination and favoritism can no longer be allowed under its provisions. The rich and the poor must share alike the burdens of taxation in proportion to the value of the property held by each respectively. The basis of taxation is property itself, not the owner's interest therein.

Our conclusions are that Sections 18 and 19, of the act referred to are clearly unconstitutional and void, and must be entirely disregarded. This conclusion in no way affects the balance of the revenue law, as these sections can be stricken from the act without in the least affecting the other provisions of the law. It is well settled that, when the unconstitutional part of a statute can be separated from the remainder, such portion only will be declared unconstitutional, and the remainder remains in force. "It is only when different clauses of an act are so dependent upon each other that it is evident the legislature would not have enacted one of them without the other,—as when the two things provided are necessary parts of one system—that the whole act will fall with the invalidity of one clause. When there is no such connection and dependency the act will stand, though different parts of it are rejected." Huntington v. Worthen, *supra.* In this case Sections 18 and 19 of the act can be stricken from the statute and the remainder of the act stand unaffected by such elimination.

In view of the importance of the question submitted, to the state and its citizens, and of the fact that courts and judges should only pronounce an act or parts of an act of the legislature unconstitutional, in a case where such provisions are clearly in conflict with the organic act, we have given the first question presented very careful consideration. The views here expressed render unnecessary a consideration of the second question submitted, and we therefore express no opinion upon it.

A. G. KELLAM,
JNO. E. BENNETT,
DIGHTON CORSON,
Judges.