DAKOTA LODGE NO. 1, I. O. O. F., Appellant, v. YANKTON COUNTY, Respondent.

(223 N. W. 330.)

(File No. 6529. Opinion filed January 26, 1929.)
(Rehearing granted April 13, 1929.)

*Clark & Wyman* and *Lars A. Bruce,* all of Yankton, for Appellant.

*Lee H. Cope,* State's Attorney, and *Orvis & French,* all of Yankton, for Respondent.

MISER, C. This is an action by Dakota Lodge No. 1, Independent Order of Odd Fellows, a South Dakota corporation, against Yankton county, for the return and refund of $776.57, with interest, being taxes paid for the years 1907 to 1918, inclusive, and for the years 1922 to 1923, inclusive, on certain lots owned by plaintiff. The ground for claiming the refund is that, under the Constitution and statutes of this state, the property upon which the taxes were paid is exempt from taxation, because Dakota Lodge No. 1, Independent Order of Odd Fellows, is a charitable institution within the meaning of section 6, art. 11, Constitution of South Dakota, section 2056, Rev. Pol. Code of 1903, section 6670, Rev. Code 1919, and chapter 106, Laws of 1919. Inasmuch as important changes in the fundamental law relating to exemption from taxation were made by a constitutional amendment in 1918, and by the enactment of chapter 106 of the Session Laws of 1919 we shall first examine into the question of right to exemption from the taxes thereafter paid.

In State ex rel. Eveland v. Johns, 43 S. D. 279, 178 N. W. 945, this court held that the express power given to the Legislature by section 2 of article 11 of the South Dakota Constitution, as amended in 1918, "to determine what class or classes of property shall be subject to taxation and what property, if any, shall not be subject to taxation," made the inconsistent provisions of sections 6 and 7 of said article 11 "subservient to the purposes of the express power so granted." The court also said: "We are therefore of the view that Chapters 105 and 106, Session Laws of 1919, is

a constitutional and valid exercise of legislative power and authority."

It was, therefore, with a full consideration of sections 5, 6, and 7 of article 11, as well as section 2 of said article as amended in 1918, as well as· consideration of section 6670, R. C. 1919, as amended by chapter 106, Laws 1919, that this court said, in Re Dakota Wesleyan University, 48 S. D. 84, 202 N. W. 284, that "Under our·present Constitution and existing statute all property that is owned by religious, educational, charitable or benevolent societies, * * * and all property * * * that is used exclusively for charitable, benevolent, religious, or educational purposes, is exempt from taxation."

In the case at bar, the trial court found that the lots in question had at no time since plaintiff became the owner of the same been used exclusively for charitable or benevolent purposes within the meaning of section 6670, and that the plaintiff is not a charitable or benevolent society within the meaning of that section, and rendered judgment dismissing plaintiff's complaint and confirming the action of defendant county in rejecting the application for refund. From this judgment plaintiff has appealed. Respondent does not agree with the appellant that the question whether this lodge is a charitable institution is the sole question presented on this appeal; but, in the view we take of this case, it is unnecessary to decide whether the method of recovery chosen by plaintiff was the proper method, nor to decide the applicability of the statute of limitations to the law relating to refunds.

Was Dakota Lodge No. 1, Independent Order of Odd Fellows, a charitable society within the meaning of subdivision 3 of Section 6670, R. C. 1919, after the amendment by chapter 106, S. L. 1919, and prior to the amendment by chapter 46, S. L. 1927?

It may be·accepted as a fact that the Independent Order of Odd Fellows is a great fraternity, which "was founded from a desire for human brotherhood," and· that, as the proof shows, from 1830 to 1924, it spent in the United States and in nine other countries where established over $200,000,000 in the relief of its members and their widowed families, out of a total revenue of about $600,000,000; but the lots on which these taxes were levied were not owned by the Independent Order of Odd Fellows nor by its Sovereign Grand Lodge, but by Dakota Lodge No. 1. Conse-

quently, the question of exemption is not determined by whether this great brotherhood is a charitable society within the meaning of section 6670, but by whether the owner of these lots, Dakota Lodge No. 1, appellant herein, is a charitable society within such meaning; nor are we now concerned with the right of Legislature to specifically provide what property of such fraternal lodges may be exempt, nor whether, in enacting chapter 46 of the Session Laws of 1927, the legislative intent was to exempt such property. Indeed, if this decision be limited, as it should be limited, to the facts as presented to the trial court, the question to be decided is whether the finding of the trial court that Dakota Lodge No. 1 was not a charitable society within the meaning of section 6670, was or was not contrary to the evidence adduced.

At the trial, the facts were stipulated, and by stipulation certain exhibits were admitted in evidence. One exhibit showed the income received by plaintiff from all sources from 1907 to 1926, inclusive, to be $40, 940.36. Another exhibit admitted by a stipulation to be "a statement showing the amount of money disbursed by plaintiff for charitable purposes each year, from the year 1907 to June 23, 1926, inclusive," showed that, in a like period, plaintiff disbursed for relief $5,626.98, for home fund $4,340.35, and for Grand Lodge dues $3,455.67, or a total disbursement for these purposes of $13,423.00. What was done by plaintiff with the remaining $27,517.36 does not appear. By the by-laws of plaintiff corporation, it appears that the funds of the lodge are to be expended only for its actual, necessary expenses and support, for the payment of benefits to sick and disabled members, for the relief of distressed members of the order or their families, and for the payment of funeral benefits. The by-laws further provide that, upon the decease of a member entitled to benefits, there shall be paid $30 as a funeral benefit, and further provide that weekly benefits for sickness shall be $2 per week for the first 52 weeks and $1 per week thereafter. Presumably the relief disbursed was in accordance therewith. No evidence was introduced of any charity disbursed to others nor evidence offered to show further the character of the individual disbursements listed under the headings of "relief," "home fund," and "Grand Lodge dues," the totals for which have hereinbefore been given.

In order to show the objects and purposes of the Independent

Order of Odd Fellows, it was stipulated, subject to certain objections by respondent, that a report of the Grand Representatives of the Sovereign Grand Lodge of the Order was adopted by the Grand Lodge of South Dakota at its meeting in 1926, which, in part, was as follows: "No guarantee except fellowship, no sick or health insurance. * * * To visit the sick, relieve the distressed, bury the dead and educate the orphan * * * when a guarantee is given to pay weekly sick benefits of a stipulated amount, it becomes a semi business organization and partially removed from the realm of true brotherhood."

Whether, if the sick visited, the distressed relieved, the dead buried, the orphan educated, be only members of a society and their families, such society may yet be a charitable society within the meaning of section 6670, we do not decide.

In Lutheran Hospital Ass'n v. Baker, 40 S. D. 226, 167 N. W. 148, after a review of many authorities, involving the question of exemption from taxation of hospitals and a review of the evidence in that case, this court said: "The existence in a community of such an institution which admits, cares for, and gives medical aid to the pauper as well as the prince, without private gain to itself, is a public charity in the fullest sense. * * * It relieves the public from maintaining by taxation such an institution of its own. This is the basic reason for the exemption from taxation of the property of such institutions, when the same is used exclusively for the purposes of charity."

The question in that case was whether the evidence showed the property taxed to have been used exclusively for charitable purposes; the question in this case is whether the evidence shows the property taxed to be owned by a charitable society. Appellant contends that, by section 8854, R. C. 1919, the Legislature determined the Independent Order of Odd Fellows to be a charitable society within the meaning of section 6670. Section 8854 provides how "associations for benevolent and charitable purposes * * * and lodges * * * of * * * Independent Order of Odd Fellows, * * * and other fraternal, benevolent or charitable fraternities * * * may become incorporated."

■ Even though we assume that under the authority of article 2 of section 11 of the State Constitution as now amended, the Legislature has now the right to declare that lodges such as

appellant may, by reason of their great and distinctive contributions to society, be exempted from the burden of taxation, and that the amendment to section 6670 by chapter 46, S. L. 1927, was based on the legislative assumption that lodges such as appellant are charitable societies, before a court can say that, between 1907 and 1923, a South Dakota corporation was a charitable society within the then meaning of section 6670, evidence sufficiently establishing its charitable character must be adduced. The distinctions drawn between societies held to be charitable under tax exemption statutes, and societies held otherwise, are so fine, the authorities so in conflict, as not to permit, in the decision of such a question, the assumption of facts necessary to show its charitable character when such facts have not been proven. An examination of the evidence adduced in this case does not permit this court to say that the findings of the trial court were contrary to the evidence, or its judgment contrary to the law. This applies equally to taxes for 1907-1918 and for 1922 and 1923.

The judgment is affirmed.

SHERWOOD, P. J., and POLLEY, BURCH and BROWN, JJ., concur.

CAMPBELL, J. (dissenting). We are not concerned in this case with the political or economic desirability or wisdom of exempting any class or classes of property from taxation, but only with the narrower questions of statutory interpretation and constitutional law, namely, Is the property in question exempt from taxation under a fair interpretation of a legislative act? If so, is such legislative act so interpreted repugnant to any constitutional provisions?

Prior to the constitutional amendment of 1918 the only exemption which the Legislature could make in this particular field was of "property *used* exclusively for * * * charitable purposes * * *" (Const. art 11, § 6), and any statutory exemption broader than the constitutional provision was invalid (Const. art 11, § 7; State ex rel Hayes v. Board of Equalization [1902], 16 S. D. 219, 92 N. W. 16).

I do not believe that the evidence in this case shows that the property in question was "used exclusively for charitable purposes" during the period while this constitutional limitation upon the

legislative power of exemption was in effect, and therefore I think appellant is not entitled to recover taxes paid during that period.

But at the November, 1918, election, Const. art. 11, § 2, was amended to read as follows: "To the end that the burden of taxation may be equitable upon all property, and in order that no property which is made subject to taxation shall escape, the legislature is empowered to divide all property · including moneys and credits as well as physical property into classes and to determine what class or classes of property shall be subject to taxation and what property, if any, shall not be subject to taxation. Taxes shall be uniform on all property of the same class, and shall be levied and collected for public purposes only. Taxes may be imposed upon any and all property including privileges, franchises and licenses to do business in the state. Gross earnings and net incomes may be considered in taxing any and all property, and the valuation of property for taxation purposes shall never exceed the actual value thereof. The legislature is empowered to impose taxes upon incomes and occupations, and taxes upon incomes may be graduated and progressive and reasonable exemptions may be provided" —and this court has held, in substance, and I think rightly, that such constitutional amendment in effect abrogated any limitation upon the legislative power of exemption previously existing by the terms of Const. art. 11, § 7, and left the entire matter of classification and exemption in the hands of the Legislature, subject of course to reasonableness of classification and uniformity within the class. State ex rel Eveland v. Johns (1920), 43 S. D. 279, 178 N. W. 945; In re Dakota Wesleyan University (1925), 48 S. D. 84, 202 N. W. 284.

Thereafter the Legislature duly enacted chapter 106, Laws 1919, subdivision 3 of which exempted from taxation "all property belonging to any charitable, benevolent or religious society, or used exclusively for charitable, benevolent or religious purposes." This language is identical with that of subdivision 3, § 6670, R. C. 1919, and originated as subdivision 3, § 5, c. 28, Laws 1897, but upon the re-enactment of such language after the removal by the constitutional amendment of 1918 of the limitation previously existing upon the legislative power in the premises there arises for the first time a question of any practical importance as to the proper interpretation and precise meaning of the words "belonging to any charitable, benevolent or religious society."

It will be observed that under the first clause of subd. 3, c. 106, Laws 1919, use is wholly immaterial—the sole test prescribed is ownership. It is further apparent that the words "charitable, bennevolent *or* religious" are alternatively used. A property owning society, to be entitled to the exemption under this act, need not be "charitable, benevolent *and* religious," but meets the test if is is any one of the three. Appellant does not claim to be a religious society, and the precise point of interpretation is therefore further narrowed to the question of whether or not appellant is a charitable society or a benevolent society. If it be either, or if it be both, the judgment appealed from seems to me, in part at least, erroneous.

To erect a complete, accurate, and exhaustive definition of the term "charitable society" so definite and detailed, and yet so broad and so all-inclusive that it might be applied with mathematical accuracy to any and every society, under any and all conceivable circumstances and conditions, and a precise and arbitrary determination thereby made that the society was or was not "charitable," would, I venture to think, be impossible. The terms "charitable" and "benevolent" have considerable similarity in their connotation, and yet they are by no means synonymous. It is difficult to conceive of a "charitable society" that would not, in common parlance, be also properly denominated "benevolent," even granting the fact to be that unintelligent and ill-advised charity is generally in fact malevolent and a source of positive harm to the recipient. On the other hand, it occurs to me that a society might well be properly described as "benevolent" and yet not be entirely or in any considerable part a "charitable" society in any sense in which that word is generally used or understood. It is my view that in general acceptation the term "benevolent," as applied to a society or organization, would probably include "charitable," but would also be of considerably broader significance, and this view seems to meet recognition in the cases. See Thomson's Executors v. Norris (1869), 20 N. J. Eq. 489, 523; Hegeman's Executors v. Roome (1905), 70 N. J. 562, 62 A. 392; German Corporation v. Negaunee, etc., Aid Society (1912), 172 Mich. 650, 138 N. W. 343; Hays v. Harris (1913), 73 W. Va. 17, 80 S. E. 827; In re Watkins' Estate (1922), 118 Misc. Rep. 645, 194 N. Y. S. 342.

It may further be observed in this connection that to limit the

word "benevolent" to the more restricted connotation of "charitable" would, in substance, render one or the other of such words utterly superfluous, which ought not to be done as a matter of sound construction unless the necessity for so doing is clearly apparent. As early as Bacon's Abridgement this principle of construction was stated in these words (title "Statute" I, 2, 7th Ed., vol. 7, p. 433) : "A statute ought, upon the whole, to be so construed, that, if it can be prevented, no clause, sentence or word shall be superfluous, void or insignificant." To the same effect, see numerous cases collected in the notes in the article "Statutes and Statutory Construction," I Fed. St. Ann. (2d Ed.) pp. 46, 47.

It is also, I take it, a sound and fundamental rule of statutory construction that, in legislation dealing with nontechnical matters, words are presumed to be used in their popular and generally accepted sense. See Sutherland, Statutory Construction, §§ 247, 248. The rule is phrased and illustrated in Maxwell, Interpretation of Statutes, p. 88: "In dealing with matters relating to the general public, statutes are presumed to use words in their popular sense; uti loquitur vulgus. * * * Thus, 38 Geo. III c. 5 and c. 60, which exempted 'hospitals' from the land tax, was construed as applying to all establishments popularly known by that designation, and even as extending to an asylum for orphans when it appeared more consonant to the object of the Act to give it that wider meaning, than to restrict it to what are alone 'hospitals' in the strict legal sense of the term, that is, eleemosynary institutions in which the persons benefited form a corporate body."

It seems to me that appellant in this case might very well be deemed a "charitable society," and appellant, I believe, has brought itself well within the meaning of those words as they are established by a number of well-considered cases. See, for example, Morrow v. Smith (1910), 145 Iowa, 514, 124 N. W. 316, 26 L. R. A. (N. S.) 696, Ann. Cas. 1912A, 1183; Kansas Masonic Home v. Board of Commissioners (1910), 81 Kan. 859, 106 P. 1082, 26 L. R. A. (N. S.) 702.

I realize that the courts have varied from time to time in their interpretation of the phrase "charitable society," "charitable institution," and "charitable purpose," being apparently somewhat influenced by the manner in which the question arose. Appellant has certainly brought itself within the definition of many of the cases;

but, whether or not that be so, it seems to me quite clear that appellant in any event has brought itself plainly within the popular and accepted definition of the phrase "benevolent society." As pointed out above, I believe this is considerably broader in its scope than "charitable society." I believe that people generally in this state would understand such a society as appellant to be within the words "benevolent society." It may be true in a stricter manner of speaking that societies such as appellant are more properly denominated as a matter of precise legal phraseology as "beneficial associations," but I think people generally are not accustomed to make that distinction in speaking, and are accustomed rather to use the terms interchangeably; and so the courts frequently do.

" 'Beneficial associations' may be used as a generic term to denote those organizations, whether incorporated or voluntary, which are formed, not for profit, but for the mutual protection, relief, or benefit of their members, or their members' families, relatives, dependents, or designated beneficiaries. They are known also as benefit societies, benevolent societies, and fraternal or friendly societies. While beneficial associations are frequently referred to as benevolent societies, strictly speaking they are not such. There is an essential difference between a benevolent society and a beneficial association, in the strict use of those terms, in that the former has for its object the conferring of benefits without requiring an equivalent from the one benefited, in which case it may be a charity. At the same time, the terms 'beneficial' and 'benevolent' are frequently used interchangeably, so far as the present subject is concerned, both in statutes and in judicial opinions." 7 Corpus Juris, p. 1051.

That the legislature of 1919, being the same Legislature which enacted chapter 106, Laws 1919, intended and understood the words "charitable and benevolent" as having a broad and comprehensive meaning, is evidenced by the fact that such Legislature in another statute, after defining a fraternal benefit society in the following words: "Any corporation, society, order, or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit, and having a lodge system with ritualistic form of work and representative form of government, and which shall make provision for the payment of benefits in accordance with Section 5

hereof, is hereby declared to be a Fraternal Benefit Society"—specifically declared that such fraternal benefit societies were "charitable and benevolent institutions." See chapter 232, Laws 1919, §§ 1, 30.

To summarize, it is my opinion that the words "charitable" and "benevolent" in chapter 106, Laws 1919, should be given their popular and generally accepted meaning and that they are not synonymous; "benevolent" being the broader term. I think it might be argued with much propriety that appellant had brought itself within the popular acceptation of both words, but, in any event, I, think it quite clear that appellant has shown itself well within the popular acceptance and understanding (and hence the legislative intendment) of the phrase "benevolent society." I am of the view, therefore, that appellant has shown itself entitled to recover such taxes as it has established were assessed, levied, and paid, subsequent to July 1, 1919, when chapter 106, Laws 1919, went into effect, which, if I read the record correctly, would be the taxes for the years 1922 and 1923; there being no effort in this action to recover any amount paid as taxes (if any in fact was paid) for the years 1919, 1920, 1921, 1924, or 1925. To the extent that the judgment and order appealed from prevent recovery of the two years' taxes as aforesaid, I believe they are erroneous and should be reversed.

For the foregoing reasons, I am unable to concur in the conclusions arrived at in this case by the majority of the court, and am therefore compelled to dissent.