FRIESSEN CONST. CO., INC., et al., Respondents v. ERICKSON, et. al., Appellants

(238 N.W.2d 278)

(File No. 11647. Opinion filed January 15, 1976)

**Gale E. Fisher** of **May, Johnson & Burke**, Sioux Falls, for plaintiffs and respondents.

**William J. Janklow**, Atty. Gen., **John Dewell**, Asst. Atty. Gen., Pierre, for defendants and appellants.

DOYLE, Justice.

Respondent taxpayers sued the Minnehaha County Treasurer and the South Dakota Secretary of Revenue for a refund of taxes paid under protest. The taxpayers, who installed concrete pipe for the City of Sioux Falls, were subjected to a use tax on the pipe pursuant to SDCL 10-46-5 even though they had never held title to it. The taxpayers contend that SDCL 10-46-5, when read with SDCL 10-46-1(2), does not impose a tax on them, or, in the alternative, that SDCL 10-46-5 is void as inconsistent with Art. XI, § 5 of the South Dakota Constitution. The trial court found for the taxpayers on the constitutional grounds cited. We reverse.

*I. Facts.*

The taxpayers include five construction firms[1] which suc-

---

1. The firms have not alleged that they are "instrumentalities" of the city and we have therefore assumed throughout this opinion that they are independent contractors. We express no opinion herein on a situation involving "instrumentalities" of the city. See Hallett Construction Company v. State, 1963, 80 S.D. 68, 119 N.W.2d 117.

cessfully bid on city contracts for the installation of 21,000 feet of reinforced concrete pipe and appurtenances for an addition to the central main sanitary sewer in Sioux Falls. Under the terms of the contract, the city purchased the pipe and caused it to be delivered to the installation site. The taxpayers, pursuant to detailed specifications, provided a proper foundation for the pipe, placed it, and backfilled and restored the surface. The pipe apparently became an integral part of the municipally operated sewer system.

About two years after the contracts were signed the Department of Revenue conducted audits on the taxpayers and gave each a notice of hearing to determine tax due. Subsequent to hearing, each taxpayer was assessed a use tax on the pipe it had installed. The amounts claimed by the state vary from a high of $6,220.71 to a low of $1,089.89.

*II. Conflict of SDCL 10-46-5 with SDCL 10-46-1(2).*

The first issue we must consider is whether SDCL 10-46-5 and SDCL 10-46-1(2) impose a use tax on a construction firm for pipe which is owned by a municipal corporation but which the construction firm installs in furtherance of its contract with the city.

SDCL 10-46-5 reads in part:

"Where a contractor * * * uses tangible personal property in the performance of his contract * * * whether the title to such property be in the contractor * * * or any other person, or whether the titleholder of such property would be subject to pay the sales or use tax, such contractor * * * shall pay a tax at the rate prescribed by § 10-45-2 * * *."

It seems abundantly clear that the plain meaning of the statute is that the use tax is to be imposed on a contractor, who, in the performance of his contract, uses tangible personal property, the title to which is in a nontaxable entity, such as a municipality. The taxpayers apparently admit that there is no

other logical way to read the statute when the remainder of the tax code is not considered.

However, the taxpayers argue strenuously that other sections of the tax code must be considered to give full meaning to the statute. In particular, the taxpayers suggest that the "plain meaning" construction of SDCL 10-46-5 is at odds with the definition of "use" contained in SDCL 10-46-1(2). This definition states:

> " 'Use' means and includes the exercise of right or power over tangible personal property incidental to the ownership of that property * * *."

The taxpayers assert that "use," under SDCL 10-46-5, must therefore be "incidental to ownership" even though SDCL 10-46-5 specifically states that the tax is to be imposed "whether the title to such property be in the contractor * * * or any other person." The history of the two statutes demonstrates the taxpayers' contention to be inaccurate. The definition of "use" contained in SDCL 10-46-1(2) was adopted in 1939 when the overall Use Tax Act was enacted. The definition included the "incidental to the ownership" language. See Ch. 276, Sec. 2(2), S.L.1939. In 1964 the United States Supreme Court decided United States v. Boyd, 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713. In Boyd the Supreme Court held valid a Tennessee statute which imposed a use tax upon a contractor who employed property belonging to the federal government in carrying out his contract, but who never himself held title to that property. In 1966 the South Dakota legislature enacted Ch. 256, S.L.1966, i.e., SDCL 10-46-5, which followed the language of the Tennessee statute very closely; in particular, it should be noted that both the Tennessee statute and the South Dakota statute contain language imposing the tax on the contractor "whether the title to such property be in the contractor * * * or any other person" and "whether the titleholder * * * would be subject to * * * (the) use tax." See 12 T.C.A. 67-3004; SDCL 10-46-5.

This history leads us to the conclusion that the South Dakota legislature intended in 1966 to accomplish what the Tennessee legislature had already accomplished; it intended to impose the

use tax upon those who contracted with local, state, federal or other nontaxable entities and who "used" the property of those entities in their construction contracts.

This conclusion is bolstered by SDCL 5-18-5.1 enacted in 1973. That section makes specific reference to situations in which a public corporation supplies tangible personal property for which the contractor is taxable under SDCL 10-46-5. SDCL 5-18-5.1 states:

> "When a public corporation is to supply tangible personal property to be used in performance of the contract which is taxable to the contractor under § 10-46-5, the specifications or notice to bidders shall state the purchase price or fair market value thereof, whichever is the greater, which shall be the basis for determining the contractor's liability for tax."

We regard SDCL 5-18-5.1 as an affirmation by the legislature of its intention to tax contractors who use property of a municipal corporation in the furtherance of their contracts.

We have noted above, however, that there does appear to be a conflict between the taxing statute, SDCL 10-46-5, and the definitional statute, SDCL 10-46-1(2).

Furthermore, we recognize the general principle that, " 'The courts do not favor repeals by implication, and it is the duty of this court to give effect to both enactments if their provisions can be reconciled'." Argo Oil Corporation v. Lathrop, 76 S.D. 70,76, 72 N.W.2d 431, 435, quoting Brookings County v. Sayre, 53 S.D. 350, 354, 220 N.W. 918, 920. Our analysis has indicated that there is an irreconcilability between the statutes in question as to whether a contractor may be subject to a use tax on property owned by the city. The later enacted statute, SDCL 10-46-5, allowing such taxation, must prevail in this regard. However, SDCL 10-46-1(2), the definitional statute, is still pertinent with regard to other sections of the tax law. We therefore hold, consistent with the principles announced in Lathrop, that insofar as SDCL 10-46-1(2) is in conflict with the taxing statute,

SDCL 10-46-5, the later statute should prevail. However, SDCL 10-46-1(2) retains its validity in any situation not set out in SDCL 10-46-5.

Our construction of these statutes thus allows imposition of a use tax on the taxpayers here who "used" the property of the municipality in completing their contracts.

We note that this interpretation is squarely in line with decisions of the Tennessee Supreme Court. In a case very similar to our own, that court construed 12 T.C.A. 67-3002(h) (an "incidental to ownership" section comparable to SDCL 10-46-1(2)) with 12 T.C.A. 67-3004 (a use tax on government contractors section comparable to SDCL 10-46-5). The Tennessee Court found that a use tax could be imposed on a contractor who installed a gas pipeline for the city even though the pipe was owned by the city. The court decisively rejected the contention that the contractor necessarily had to exercise power over the pipeline "incidental to ownership." Hall Contracting Corporation v. Tidwell, Tenn. 1974, 507 S.W.2d 697. Furthermore, the Tennessee Court has held that a contractor who installs carpet owned by a tax exempt institution is liable for the use tax on the carpet. General Carpet Contractors, Inc. v. Tidwell, Tenn. 1974, 511 S.W.2d 241. The Tennessee Court thus has also construed the sections at issue so as to allow a tax in a situation such as is presented to this court.

*III. Constitutionality of SDCL 10-46-5.*

■ The final question with which we must deal is whether Art. XI, § 5 of the South Dakota Constitution invalidates SDCL 10-46-5. Article XI, § 5[2] reads in part:

> "The property of the United States and of the state, county and municipal corporations, both real and personal, shall be exempt from taxation * * *."

The trial court, acting under the authority of that section, struck

---

2. This constitutional provision is referred to in the first section of SDCL 10-46-7, which exempts by statute property which may not constitutionally be taxed.

down SDCL 10-46-5 as it applied to the taxpayers here. It acted on the theory that the "all encompassing" provision of the constitution forbids any levy of taxes which falls directly or indirectly on the city unless the city somehow consents.[3]

Our examination of the cases of this court leads us to the conviction that the use tax, as directly or indirectly applied to municipalities, does not fall under the proscription of Art. XI, § 5, because a use tax is not in law a tax on property itself but rather it is a tax on its use. We therefore reverse the trial court and hold SDCL 10-46-5 to be constitutional.

The leading decision on point is State v. City of Sioux Falls, 1932, 60 S.D. 330, 244 N.W. 365. In that case the court considered whether the state could levy a motor fuel tax on the city for gasoline used in its business. The court held that such a tax was proper, concluding that "the tax in question does not purport to be, and is not in any sense, a tax upon property * * * and the constitutional provision here urged by its express terms has application only to the taxation of property, real or personal." The court held that a use tax could constitutionally be imposed directly on a city even when it used property in the transaction of city business.[4] See also City of Pierre v. Stout, 1937, 65 S.D. 597, 276 N.W. 922.

It only remains to conclude, as we do, that if the use tax is not unconstitutional as applied directly to the city, it certainly cannot be held to be unconstitutional as applied to one who contracts with the city.

---

3.  The trial court indicated that it did not consider a use tax on material purchased by the contractor to be repugnant to the constitution even though it is clear that the ultimate cost would ordinarily be borne by the city.

4.  The dissent argues that State v. City of Sioux Falls, supra, should be overruled in light of the definition of the term "property" it sees as implied by Art. XI, § 2. As the dissent notes, however, the pertinent amendment to Art. XI, § 2, was adopted amid attacks in this court on the legislature's power to tax. It would be anomalous to find that section 2 could be used to restrict the power of the legislature to tax when the purpose of the amendment to section 2 was clearly to assure or expand the power of the legislature to tax.

In line with our holding, as stated by the dissent, that this court is bound to sustain the validity of the legislative enactment unless it appears invalid, beyond a reasonable doubt, Nelson v. Chicago, B. & Q. R. Co., 1924, 47 S.D. 228, 197 N.W. 288, we must disagree with the dissent's proposal to overrule City of Sioux Falls, supra.

The decision of the trial court holding SDCL 10-46-5 unconstitutional is reversed and this case is remanded to the trial court for proceedings not inconsistent with this opinion.

DUNN, C. J., and WINANS and WOLLMAN, JJ., concur.

COLER, J., dissents.

COLER, Justice (dissenting).

I would affirm the trial court.

Granting that this court is bound to sustain the validity of a legislative enactment unless it appears invalid beyond a reasonable doubt, Nelson v. Chicago, B. & Q. Ry., 1924, 47 S.D. 228, 197 N.W. 288, yet the question was squarely presented and we must be mindful that

> " * * * courts must not ignore the plain provisions of the Constitution, but should recognize that it is to the courts alone that the people can look to preserve for them those rights which have been guaranteed to them through restrictions placed upon legislation by such Constitution." In re McKennan's Estate, 1910, 25 S.D. 369, 376, 126 N.W. 611, 614; 33 L.R.A., N.S., 606; overruled on other grounds, In re McKennan's Estate, 1911, 27 S.D. 136, 130 N.W. 33, Ann.Cas.1913D, 745.

I recognize that the Revenue Department, which instigated the statute in question, had a good motive in seeking federal dollars even if it meant to add a burden to local government and its citizens and taxpayers. The Tennessee statute, construed in United States v. Boyd, 1964, 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713, was utilized in our legislation without the interrelationship between Article XI, §§ 2 and 5 of our State Constitution and SDCL §§ 10-46-1(2), 10-46-7 having been fully analyzed.

A good deal is made in the state's argument and in the majority opinion of the Tennessee law and the Tennessee decision.

The Tennessee Constitution, Article 2, § 28,* is not at all like our own constitutional provisions and no state constitutional issue was there involved. The only hurdle that the Tennessee courts and the United States Supreme Court had in United States v. Boyd, supra, was whether, under the federal act, the transaction was taxable as against the implied constitutional immunity of the United States as a contracting party. The principal point of the decision in United States v. Boyd, supra, is that the Congress had recognized prior Court decisions and had amended the Atomic Energy Act to allow such taxation. I see no relevance in the Tennessee statute or the Boyd case considering disparity of constitutional provisions and the issue before us.

The legislature cannot, as it attempts to do by SDCL 10-46-5, "either enlarge or restrict the meaning of the term 'property' as such term is used in the Constitution of this state." National Surety Co. v. Starkey, 1919, 41 S.D. 356, 170 N.W. 582. I submit that the legislature is equally denied the right to declare that property which the city purchases in their own right is not in fact the property of the city. It is, as the trial court identified it, a subterfuge which is contrary to the Constitution and our statutes.

Even if we were free to disregard the property as such and its true ownership, what the act in question proposes is a tax on the "use" to which that property is put and the tax is declared to be "an excise tax * * * imposed on the privilege of the use * * *." SDCL 10-46-2. The "privilege" of use is also a "property" of the municipality, South Dakota Constitution Article XI, § 2, and is

---

* The then existing language of Article 2, § 28 of the Tennessee Constitution, since amended, reads in part as follows:
  "All property real, personal or mixed shall be taxed, but the Legislature may except such as may be held by the State, by Counties, Cities or Towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational, and shall except one thousand dollars worth of personal property in the hands of each taxpayer, and the direct product of the soil in the hands of the producer, and his immediate vendee. All property shall be taxed according to its value, that value to be ascertained in such manner as the Legislature shall direct, so that taxes shall be equal and uniform throughout the State. No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of the same value, but the Legislature shall have power to tax Merchants, Peddlers, and privileges, in such manner as they may from time to time direct."

therefore exempt. SDCL 10-46-7. This position is entirely consistent with decisions of this court which have declared excise taxes as taxes on a "privilege," Barnes v. Stout, 1937, 65 S.D. 592, 596, 276 N.W. 920, 922; City of Pierre v. Stout, 1937, 65 S.D. 597, 599, 276 N.W. 922, 924; State v. City of Sioux Falls, 1932, 60 S.D. 330, 335, 244 N.W. 365, 367, thus placing such taxes squarely within the definition of property as defined by the South Dakota Constitution Article XI, § 2.

The legislature has recognized the mandate of the Constitution by declaring the exemption of the very property or use of the property sought to be taxed in this case. SDCL 10-46-7. This statute is not surplusage or merely a repetition of the constitutional exemption but declarative of the right of exemption. Scandrett v. Nord, 1945, 70 S.D. 527, 19 N.W.2d 344.

I recognize that what I propose would possibly overrule State v. City of Sioux Falls, supra, and cases that have relied upon its reasoning, but I am convinced the time has come to recognize that that line of reasoning is erroneous in light of the 1912 and 1918 amendments to § 2 of Article XI of our Constitution and the later amendments to Article XI, § 5 and other decisions of the court which have recognized the changes wrought in the entire Constitution by those amendments.

I have reached this conclusion upon the analysis of our case law predating these amendments and including decisions which were contemporaneous with H.J.R. #12 (introduced on February 9, 1911, delivered to Secretary of State on March 3, 1911) which was enacted and designated as Chapter 265 of the Session Laws of 1911 and when ratified in 1912 expanded the definition of "property" to include "privileges" under the South Dakota Constitution Article XI, § 2. This amendment recognized the distinction drawn by the court between taxation of property in the context of real and personal property as those terms then appeared in several provisions of the Constitution and, on the other hand, fees imposed in the exercise of the police power which were not covered by the constitutional limitations on the legislature.

Considering specifically the first decision of In re McKennan's Estate, 1910, 25 S.D. 369, 126 N.W. 611, 33 L.R.A.,N.S., 606 written by Judge Whiting with all judges joining except Haney, who dissented but filed no opinion, which declared the inheritance tax law unconstitutional, the legislative enactment of Ch. 265, S.L. 1911, is quite understandable. Prior decisions had assured the legislature that occupational and privilege taxes or fees were not a tax on property and that the legislative power was supreme and unfettered. In re Construction of Revenue Law, 1891, 2 S.D. 58, 48 N.W. 813; In re Assessment and Collection of Taxes, 1893, 4 S.D. 6, 54 N.W. 818; In re Watson, 1903, 17 S.D. 486, 97 N.W. 463, 2 Ann.Cas. 321. The legislature could not have anticipated a reversal of the first McKennan's opinion during the next legislative session, In re McKennan's Estate, 1911, 27 S.D. 136, 130 N.W. 33, Ann.Cas.1913D, 745, or that on a three to two decision the court would uphold the insurance company tax law, Ch. 65, S.L.1907, Queen City Ins. Co. v. Basford, 1911, 27 S.D. 164, 130 N.W. 44, perhaps rendering the proposed amendment unnecessary or unwise. The amendment did, however, redefine property to assure continued legislative authority.

This court has heretofore recognized that the aforementioned amendments to Article XI, § 2 have:

(1) "obliterated" the portion of Art. VI, § 17 requiring that "all taxation shall be equal and uniform," Wheelon v. South Dakota Land Settlement Board, 1921, 43 S.D. 551, 181 N.W. 359; Peterson Oil Co. v. Frary, 1923, 46 S.D. 258, 192 N.W. 366, affirmed in 264 U.S. 570, 44 S.Ct. 334, 68 L.Ed. 854; Commercial State Bank of Wagner v. Wilson, 1928, 53 S.D. 82, 220 N.W. 152;

(2) "superseded" the $200 property exemption limitation of Art. XI, §§ 6 and 7; State ex rel. Eveland v. Johns, 1920, 43 S.D. 279, 178 N.W. 945; Dakota Lodge No. 1, I.O.O.F. v. Yankton County, 1929, 54 S.D. 402, 223 N.W. 330, affirmed on rehearing in 56 S.D. 234, 228 N.W. 238; Egan Independent Consol.

School Dist. No. 1, Moody County v. Minnehaha County, 1936, 65 S.D. 32, 270 N.W. 527, 108 A.L.R. 572; and

(3) "bestowed" power on the legislature that is not diminished by the provisions of Art. XI, § 6 National College of Business v. Pennington County, 1966, 82 S.D. 391, 146 N.W.2d 731.

I submit, that, in addition to the foregoing modifications, the 1912 amendments which were carried forward by the 1918 amendments to Article XI, § 2 have redefined "property" or at least "personal property" for the purposes of the Constitution. The term "property" is now defined as "including privileges, franchises and licenses to do business in the state" and that property of the municipality both physically and in its use is constitutionally exempt. South Dakota Constitution Article XI, § 2; SDCL 10-46-7.