HALLETT CONSTRUCTION COMPANY, Appellant

v.

STATE ex rel. GILLIS, Respondent

(119 N.W.2d 117)

(File No. 9962. Opinion filed January 10, 1963)

**Stephens, Riter & Mayer,** Pierre, for Plaintiff and Appellant.

**A. C. Miller,** Atty. Gen. **John P. Dewell,** Asst. Atty. Gen., Pierre, for Defendant and Respondent.

SMITH, C. Plaintiff's claim for a refund of sums exacted as use tax due under SDC 1960 Supp. 57.43 was denied by the Commissioner of Revenue and by the circuit court, after a trial de novo pursuant to SDC 57.3002 and SDC 1960 Supp. 57.4317 and SDC 57.3313. Plaintiff has appealed.

Pertinent provisions of SDC 1960 Supp. 57.43 read as follows:

"(1) An excise tax is hereby imposed on the privilege of the use, storage, and consumption in this state of tangible personal property purchased on or after the effective date of this section for use in this state at the same rate of per cent of the purchase price of said property as is imposed by SDC 57.3201 or amendment which may hereafter be made thereto.  *  *  *

"(3) In addition, said tax is hereby imposed upon every person using, storing, or otherwise consuming such property within this state until such tax has been paid directly to a retailer or the Commissioner of Revenue as hereinafter provided." SDC 1960 Supp. 57.4303(1) and (3).

"The following words, terms and phrases when used in this chapter shall have the meanings ascribed to them in this section:" SDC 1960 Supp. 57.4302.

"(1) 'Storage' means and includes any keeping or retention in this state for use or other consumption in the

state of South Dakota for any purpose except sale in the regular course of business.

"(2) 'Use' means and includes the exercise of right or power over tangible personal property incidental to the ownership of that property, except that it shall not include the sale of that property in the regular course of business.

"(3) 'Purchase' means any transfer, * * * in any manner or by any means whatsoever, for a consideration. * * *

"(5) 'Tangible Personal Property' m e a n s tangible goods, wares, merchandise, * * *.

"(6) 'Retailer' means and includes every person engaged in the business of selling tangible personal property for use, storage or other consumption within the meaning of this chapter; * * *.

"(9) 'Business' includes any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit or advantage either direct, or indirect."

"The use in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this chapter.

"(1) Tangible personal property, the gross receipts from the sale of which are to be included in the measure of the tax imposed by SDC 57.31, 57.32 and 57.33 * * * . (Retail Occupational Sales Tax Act.)

"(3) Tangible personal property, the storage, use or other consumption of which this state is prohibited from taxing under the Constitution or laws of the United States of America * * * or tangible personal property sold to the United States, * * *." SDC 1960 Supp. 57.4304.

In June of 1951 plaintiff entered into a contract with the Bureau of Reclamation on behalf of the United States dealing with the construction of transmission lines across South Dakota as a part of the Missouri River Basin Project. The contract included detailed specifications according to which materials used were manufactured and furnished and provided that plaintiff "shall furnish the materials, and perform the work for construction and completion"; "All material * * * shall be subject to inspection, examination, and test by Government inspectors at any and all times during manufacture and/or construction and at any and all places where such manufacture and/or construction are carried on"; "Unless otherwise provided in the specifications, partial payments will be made as the work progresses at the end of each calendar month * * * on estimates * * * "; "That on completion and acceptance of * * * other division of the contract, on which the price is stated separately in the contract, payment may be made in full, including retained percentages thereon * * *"; and **"All material * * * covered by partial payments made shall thereupon become the sole property of the Government,** * * *." A further provision of the contract reads, "The contractor * * * shall be responsible for all materials delivered and work performed until completion and final acceptance."

Because some point is made of it in the argument of counsel, the course of conduct of the parties during the performance of the contract is epitomized. Between 1952 and 1955 a not inconsiderable quantity of material was manufactured beyond the borders of our state and shipped to Glenham, South Dakota. It was manufactured pursuant to orders placed by plaintiff but in accordance with specifications contained in the contract. Inspection by the government of much of this material was made at the factory, and in certain instances government priority was employed in the procurement of material used in the manufacturing. Shipments from the factory were to Hallett Construction Company, Glenham, South Dakota, and invoices were forwarded to plaintiff at its Crosby, Minnesota, office, reading "Hallett Construction Company, Line Department, Bureau of Reclamation * * *." At Glenham materials were placed in a yard, the fence of which bore signs reading, "Government Property—No Trespassing."

Control and responsibility for the property remained in the contractor. Payment of the invoices was made forthwith by plaintiff from its funds and a like amount was received from the government on monthly estimates by about the 10th of the following month. It is asserted that plaintiff's profit came from the work of construction and it received no profit from materials furnished. Although some of the materials remained in the Glenham yard for long months, it was all eventually moved out along the proposed lines as required in the course of construction. A total of $43,218 in use taxes were paid by plaintiff. One of the matters in difference between the parties is whether the claim for refund covers the total sum or merely the final payment of $3,782.51.

The argument of counsel presents contentions we find it most convenient to separately state and consider.

The principal position of the plaintiff-contractor, as we understand it, is that reading the contract in the light of the total facts we have outlined supra, including the conduct of the parties in the course of its performance, the conclusion is impelled that the contractor acted throughout for the government and hence title to the materials passed from the manufacturers or suppliers to the United States, or its instrumentality. Predicated on this asserted conclusion, it is urged that the storage, use, and consumption of this property was immune from taxation by force of the Constitution of the United States, and was exempt from use tax by the express terms of SDC 1960 Supp. 57.4304(3) quoted supra.

This contention is without factual support. While in a sense the contractor acted for and served the government, it did so in strict conformity with terms of an unambiguous contract which are controlling. Indubitably, that contract related it to the government as an independent contractor, rather than as its instrumentality or agency. It is settled that, in the circumstances of this case, the doctrine of implied constitutional immunity does not shield such an independent contractor from state sales and use taxation. 51 Am.Jur., Taxation, § 247, p.301. Cf. Annotation 96 L.Ed. 263.

This contention was made by the government before the United States Supreme Court in a case involving a contract with

somewhat similar terms. In declaring the contract to be controlling, and in upholding the exaction of a sales tax by the State of Alabama, the court wrote as follows:

> "The Government, to support its thesis that it was the purchaser, insists that title to the lumber passed to the Government on shipment by the seller, and points to the very extensive control by the Government over all purchases made by the contractors. * * * From these circumstances it concludes that the Government was the purchaser. The necessary corollary of its position is that the Government, if a purchaser within the taxing statute, became obligated to pay the purchase price.

> "But however extensively the Government may have reserved the right to restrict or control the action of the contractors in other respects, neither the reservation nor the exercise of that power gave to the contractors the status of agents of the Government to enter into contracts or to pledge its credit. * * * It can hardly be said that the contractors were not free to obligate themselves for the purchase of material ordered. The contract contemplated that they should do so and that the Government should reimburse them for their expenditures. * * *" Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615.

In contrast cf. Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546, dealing with a contract relating the contractor to the government as its agent.

In a companion case dealing with a use tax imposed under the Alabama statutes the Supreme Court wrote:

> "For the reasons stated at length in our opinion in the King & Boozer case we think that the contractors, in purchasing and bringing the building material into the state and in appropriating it to their contract with the Government, were not agents or instrumentalities of the Government; and they are not relieved of the tax, to which they would otherwise be subject, by reason of the fact

that they are Government contractors. * * *" Curry v. United States, 314 U.S..14, 62 S.Ct. 48, 86 L.Ed. 9.

A second position of the contractor is based upon the definition of the word "use" as contained in SDC 1960 Supp. 57.4302(2) which for the convenience of the reader we reproduce:

" 'Use' means and includes the exercise of right or power over tangible personal property incidental to the ownership of that property, except that it shall not include the sale of that property in the regular course of business."

Under an assumption that all of these materials were owned by the government before they were actually incorporated into the transmission lines, it is urged that their "use" by the contractor was not incident to its ownership as contemplated by that quoted definition. That the clear wording of the statute limits its scope to a use incident to ownership, we do not doubt. And such is the holding of the Connecticut court in the case of Avco Manufacturing Corporation v. Connelly, Tax Commissioner, 145 Conn. 161, 140 A.2d 479, urged upon us by the contractor. But so to hold is not decisive of this cause, because, unquestionably the contractor, incident to its then ownership, caused these materials to be brought into South Dakota and here immediately appropriated them to the performance of its contract with the government. Its conduct in so doing constituted "the exercise of right or power over" this tangible personal property, and brought it within the scope of the act unless excluded therefrom by the remaining words of the definition of "use" reading "except it shall not include the sale of that property in the regular course of business" or unless exempted from the tax by the words of SDC 1960 Supp. 57.4304(3) quoted supra, reading "or tangible personal property sold to the United States." So we are brought to a consideration of the question whether, within the meaning of our Use Tax Act, a contractor sells to an owner the materials which he has contracted to furnish in the performance of his contract.

Whether, within the terms of statutes dealing with sales of tangible personal property containing provisions similar to those appearing in our Retail Occupational Sales Act, SDC 57.31, de-

fining a retail sale as the sale of personal property to the consumer or user thereof, or to any person for any purpose other than for resale, SDC 57.3101(5), courts have considered and reconsidered whether a contractor resells to an owner the materials he has agreed to furnish in the performance of his construction contract with the owner. Cf. Duhame v. State Tax Commission, 65 Ariz. 268, 179 P.2d 252, 171 A.L.R. 684, and Crane Co. v. Ariz. State Tax Commission, 63 Ariz. 426, 163 P.2d 656, 163 A.L.R. 261, and the annotations appearing respectively at 171 A.L.R. 697 and 163 A.L.R. 276. Analogous decisions dealing with the Use Tax Acts similar to ours have not come to our attention. In Duhame v. State Tax Commission, supra, Mr. Justice Udall's opinion includes the following interesting comment:

"Both parties here are agreed that decisions from other states are not too helpful and, in fact, are sometimes misleading by reason of the differences in Excise Acts. Nevertheless, the one basic principle that may be gleaned safely from the reported cases is that when a completed structure is erected on the owner's land, it is as much real property as the land itself. By no definition or reasoning is it tangible personal property. The constituent elements of personalty have been destroyed by a metamorphosis, i. e. by their incorporation into the completed structure. Through the contractor's application of skill and labor to the materials, something different has been wrought from their use and union, and the materials purchased are no longer to be distinguished as personalty. Therefore, we hold that when the contractor buys materials and supplies for use in fulfilling his contract, he does not purchase them for resale as tangible personal property, but for use in producing the completed job. He is not a trader or dealer.   *   *   *"

Insight into the light in which a contractor was regarded by the legislature which enacted our Use Tax Act, and as to its intended application to those engaged in that business, is afforded by the history of this legislation. As originally enacted as Section 4(3), Ch. 276, Laws of 1939, SDC 1960 Supp. 57.4304(3), dealing with exemptions from the use tax, read

"Tangible personal property, the storage, use or other consumption of which this State is prohibited from taxing under the Constitution or laws of the United States of America or under the Constitution of this State, or which is used or to be used in operating or maintaining interstate transportation or interstate commerce or **tangible personal property to be used for the performance of a building or construction contract executed prior to the effective date of this Act.**"

After the lapse of time had rendered this emphasized clause redundant, it was eliminated from the Act. Cf. Ch. 301, Laws of 1943. However, the conclusion is inescapable that the clause was deemed essential in the first instance and was therefore inserted, because the legislature intended a contractor should pay a use tax on materials he uses in the performance of a building or construction contract if he has not previously paid a sales tax thereon to a retailer. Because his over-all obligation under his contract is to create something other than goods, wares, and merchandise for an owner from materials he agrees to furnish, we think such a contractor was classified in the mind of the legislators as a user rather than a seller of materials. If, in the opinion of the legislative body, he had been regarded as a dealer in tangible personal property, and his transaction with the owner as a sale of materials, it would have been unnecessary for it to have inserted the clause we have emphasized supra in the original Use Tax Act because the materials there described as furnished by the contractor in the performance of his contract would have been excluded from the scope of the act by the clause of its definition of "use" reading "that it shall not include the sale of that property in the regular course of business", SDC 1960 Supp. 57.4302(2), supra, and the sweep that clause gains from the definitions of "Purchase" and "Business" quoted from the act supra.

In conclusion, it seems very clear to us that, within the contemplation of our Use Tax Act and the terms of this contract, these materials were furnished in performance of a contract to construct these great transmission lines and were not sold to the United States and that in causing them to be brought into

South Dakota and here forthwith appropriating them to the performance of that contract, the contractor exercised a right or power over them incidental to its then ownership, and thus became liable for the tax as a user.

In view of this conclusion, other matters urged are not deemed to merit discussion.

The judgment of the trial court is affirmed.

HANSON, P. J., and ROBERTS, RENTTO and BIEGELMEIER, JJ., concur.

HOMEYER, J., not participating.