**GREAT LAKES GAS TRANSMISSION L.P., Respondent,**

v.

**COMMISSIONER OF REVENUE, Relator.**

No. CX–01–649.

Supreme Court of Minnesota.

Jan. 31, 2002.

Mike Hatch, Attorney General, Thomas K. Overton, Assistant Attorney General, St. Paul, for relators.

John W. Windhorst, Jr., Dorsey & Whitney LLP, Christopher Shaheen, Dorsey & Whitney LLP, Minneapolis, for respondents.

## OPINION

STRINGER, Justice.

The commissioner of revenue appeals a tax court ruling granting the refund of use taxes paid by taxpayer Great Lakes Gas Transmission Limited Partnership ("Great Lakes") on natural gas consumed as fuel for compressor engines located at various points along a natural gas pipeline in Minnesota. We affirm the tax court and hold that the natural gas is subject to use tax under Minn.Stat. § 297A.14, subd. 1 (1994), but as it is consumed in the industrial production of personal property intended to be sold ultimately at retail, it is exempt from tax under Minn.Stat. § 297A.25, subd. 9 (1994).

Great Lakes transports natural gas through a pipeline that runs approximately 1,000 miles from the Canadian border near the northwest tip of Minnesota, through Minnesota, Wisconsin, and Michigan and back again to the Canadian border in Michigan. Approximately every 75 miles along the pipeline the gas passes through a compressor station.[1] At each compressor station, natural gas passes through separators, which remove liquids and other im-

1. Five such compressor stations are located in Minnesota. This case pertains only to the tax collected for the use of compressor fuel at those five stations.

purities, and also through compressors where gas pressure is increased and gas temperature is regulated. The issue here relates to whether Great Lakes must pay use tax on the natural gas that is diverted from the pipeline and consumed as fuel for the compressor engines.

Great Lakes filed Minnesota tax returns for 1994 and 1995 paying use tax totaling $1,438,379 on the gas consumed in Minnesota to power the five compressors. It later filed an amended return claiming a refund for the taxes paid plus statutory interest. The commissioner of revenue denied the refund citing Notice 95–10[2] and ruled that the compressor fuel was purchased for use and consumption in Minnesota because shippers provide the natural gas to Great Lakes as partial consideration for Great Lakes's gas transportation services.

■ Great Lakes appealed the commissioner's ruling to the Minnesota Tax Court arguing that compressor fuel consumption should not be taxed for three reasons: Great Lakes did not technically use or purchase the gas; the gas is tax exempt under Minn.Stat. § 297.25, subd. 9 as material consumed in industrial production;[3] and the tax is prohibited by several constitutional provisions.[4] Pursuant to the process outlined in *Erie Mining Co. v. Commissioner of Revenue*, 343 N.W.2d 261, 264 (Minn.1984), the tax court referred the federal constitutional issues to the Ramsey County District Court, and the district court subsequently transferred the case back to the tax court for decision.[5]

**2.** Revenue Notice 95–10 reads in pertinent part:

> Natural gas that is purchased, consumed or used by a natural gas pipeline company in its operations or during the course of its operations in Minnesota is subject to sales or use taxation under Minn.Stat. Chap. 297A. If the gas is transferred to the pipeline company as reimbursement in-kind or as part of the consideration for the pipeline transportation services, the transaction will be considered a taxable transaction of pipeline services for natural gas and subject to sales or use tax.

Minn. Rev. Notice 95–10 (March 8, 1995).

**3.** The industrial production exemption in Minn.Stat. § 297A.25, subd. 9 exempts from use tax "the storage, use, or consumption of all materials, including chemicals, fuels, petroleum products * * * used or consumed in * * * industrial production of personal property intended to be sold ultimately at retail."

**4.** To this court Great Lakes argues that imposing a use tax on its compressor fuel violates the Supremacy Clause of the U.S. Constitution, U.S. Const. art. VI, cl. 2, and the Commerce Clause of the U.S. Constitution, U.S. Const. art. I, § 8, cl. 3. Great Lakes also argues that taxation of the compressor fuel is prohibited by the "statutory constitutional exemption" codified at Minn.Stat. § 297A.25, subd. 4 (1994). The statute provides in perti-

nent part "the gross receipts from the sale of and the storage, use or other consumption in Minnesota of tangible personal property * * * which under the Constitution or laws of the United States or under the Constitution of Minnesota, the state of Minnesota is prohibited from taxing, are exempt." Great Lakes argues that because the federal constitution was interpreted to preclude use tax upon a transaction that is an integral part of interstate commerce in 1967, and the use tax section was enacted in 1967, that interpretation of the Commerce Clause should control this tax issue. In 2000 the legislature repealed Minn.Stat. § 297A.25. Act of Apr. 18, 2000, ch. 418, art. 1, § 45, 2000 Minn. Laws 796, 849–50. The revised statutory constitutional exemption is now codified at Minn.Stat. § 297A.67, subd. 24 (Supp.2001).

**5.** The tax court was created by the legislature as an administrative agency of the executive branch. *See* Minn.Stat. § 271.01, subd. 1 (2000); *In re McCannel*, 301 N.W.2d 910, 919 (Minn.1980) (recognizing the tax court as "essentially an administrative agency, deriving its power from a grant by the legislature"). The tax court has limited jurisdiction and no original jurisdiction to hear constitutional matters; however it has subject matter jurisdiction to hear constitutional claims if the case comes to it from the district court. *Erie Mining Co.*, 343 N.W.2d at 264; *McCannel*,

The tax court concluded that while Great Lakes's consumption of compressor fuel for its pipeline is a taxable event under the use tax statute, it is tax exempt as material consumed in industrial production under Minn.Stat. § 297A.25, subd. 9. The tax court therefore ordered a refund of the tax Great Lakes paid on the compressor fuel in 1994 and 1995, plus interest, and did not reach the constitutional issues. The commissioner's motion for amended findings was denied, and the commissioner seeks certiorari review by this court. Great Lakes also filed a notice of review of the tax court's ruling that the gas consumption was a taxable event and of the constitutional issues that the court declined to reach.

A final order of the tax court may be challenged on certiorari on the basis that "the tax court was without jurisdiction, that the order of the tax court was not justified by the evidence or was not in conformity with law, or that the tax court committed any other error of law." Minn. Stat. § 271.10, subd. 1 (2000). The tax court's factual determinations are justified if there is " 'reasonable evidence to sustain the findings.' " *Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn.1992) (quoting *Red Owl Stores, Inc. v. Comm'r of Taxation*, 264 Minn. 1, 9–10, 117 N.W.2d 401, 407 (1962)). We review questions of law de novo, *F–D Oil Company, Inc. v. Comm'r of Revenue*, 560 N.W.2d 701, 704 (Minn.1997); *Morton Bldgs.*, 488 N.W.2d at 257, but reverse factual findings only where a review of the entire record leaves us with " 'a firm conviction that a mistake has been made,' " *see Krech v. Comm'r of Revenue*, 557 N.W.2d 335, 338 (Minn.1997) (quoting *Montgomery Ward & Co., Inc. v. County*

*of Hennepin*, 482 N.W.2d 785, 788 (Minn. 1992)).

I.

We first consider whether the consumption of compressor fuel constitutes a taxable event for the purposes of the use tax statute. Minnesota Statutes § 297A.14, subd. 1, imposes a use tax on "the privilege of using, storing, distributing, or consuming in Minnesota tangible personal property or taxable services purchased for use, storage, distribution, or consumption in this state." Three requirements must be met to impose a use tax: first, the item of tangible personal property must be used, stored, or consumed in Minnesota; second, the item of tangible personal property must be purchased; and third, the purchase of the item of personal property must have been for use, storage or consumption in Minnesota. *See Morton Bldgs.*, 488 N.W.2d at 257.

As to the first requirement, the term "use" is broadly defined for tax purposes in pertinent part as "the exercise of any right or power over tangible personal property." Minn. Stat § 297A.01, subd. 6 (1994). This court has explained that "[o]ur reluctance to narrow the [definition] of 'use' * * * is consistent with the general goal of the sales and use tax statutes, namely, to establish a complementary scheme whereby everything is presumed taxable unless specifically exempted." *Morton Bldgs.*, 488 N.W.2d at 258. The tax court concluded that the "use" element is satisfied because the gas is received by Great Lakes and is burned as fuel; therefore it is literally consumed in Great Lakes's compressor engines. As Great Lakes has conceded that it consumes the fuel, we agree with the tax court's conclu-

301 N.W.2d at 919–20. In essence, the district court transfers its legal and equitable powers to the tax court, thereby giving the tax

court jurisdiction to hear constitutional issues.

sion that consumption qualifies as a type of "use"—indeed, it could well be considered the ultimate use.

Great Lakes does not concede that the second requirement—purchase—is met, however. We disagree. Minnesota Statutes § 297A.01, subd. 3 (1994), provides that a "purchase" includes but is not limited to any "transfer of title or possession, or both, of tangible personal property, whether absolutely or conditionally * * * for a consideration in money or by exchange or barter." The commissioner argues and the tax court ruled that Great Lakes purchased the fuel because there was a transfer of possession and the consideration was Great Lakes's gas transport services. Great Lakes acknowledges that it receives compressor fuel from gas companies as part of the consideration for transportation services but contends that is not dispositive because under Generally Accepted Accounting Principles[6] the transaction is not deemed a purchase. We may disregard a transaction's form, however, and examine its economic substance to determine whether a purchase occurs. *See Comm'r of Revenue v. Safco Prods. Co.,* 266 N.W.2d 875, 877 (Minn.1978) (citing *Transp. Leasing Corp. v. State,* 294 Minn. 134, 199 N.W.2d 817 (1972)). Here the substance of the transaction is an exchange of the compressor-consumed gas for transportation services. Minnesota Statutes § 297A.01, subd. 3 provides that a transaction qualifies as a purchase if it is "a transfer of * * * possession * * * for a consideration * * * or by exchange or barter." As the substance of the transaction clearly falls within the statutory language, we agree with the tax court that the gas was purchased by Great Lakes.[7]

The tax court ruled that the third requirement—the item must be purchased for use, storage or consumption in Minnesota—was also met. We agree. It is clear that the purchase was for consumption in the five compressors located in Minnesota. *Cf. Morton Bldgs.,* 488 N.W.2d at 258–59 (concluding that the third prong was satisfied where some portion of all raw materials purchased were to be used in Minnesota). We conclude that Great Lakes's consumption of natural gas as compressor fuel meets the three statutory requirements for imposing a use tax under Minn. Stat. § 297A.14, subd. 1.

## II.

■ Regardless of our conclusion that the transaction meets the statutory qualifications for imposing a use tax under section 297A.14, however, Great Lakes argues

---

**6.** Generally Accepted Accounting Principles are the conventions, rules and procedures that define approved accounting principles at a particular time. The source of such principles is the Financial Accounting Standards Board. *See Black's Law Dictionary* 692 (7th ed.1999).

**7.** Great Lakes also argues that the transaction was not a purchase because according to the tariff it filed with the Federal Energy Regulatory Commission (FERC)—which contains information about the services that the pipeline offers, the general terms and conditions that apply to those services, and the rates for each service offered—Great Lakes is not authorized to purchase natural gas. A Great Lakes witness testified that in 1992 FERC began a process known as "unbundling"—that is, requiring gas pipeline companies to separate the business of gas transportation from the business of buying and selling gas. Great Lakes's FERC tariff reflects its decision to become a transport-only company in 1990, and its lack of authority to buy gas. It could have chosen to participate in both gas transporting and gas trading however, and therefore its lack of authority to purchase gas is merely a reflection of its business decision to be a gas transporter rather than a regulatory ban on the purchase of gas. It does not preclude a conclusion that it purchased the gas to fuel its pipeline compressors.

that it is still entitled to a refund because the compressor fuel was consumed in the industrial production of retail goods. The industrial production exemption in Minn. Stat. § 297A.25, subd. 9 exempts from use tax "the storage, use, or consumption of all materials, including chemicals, fuels, petroleum products * * * used or consumed in * * * industrial production of personal property intended to be sold ultimately at retail." "Industrial production" is defined in Minn. R. 8130.5500, subp. 1:

> Agricultural and industrial production includes any step or steps in the production process. * * * Generally, the production process begins with the removal of raw materials from stock for the purpose of commencing activities effecting changes thereon in the course of producing the intended product. The production process ends when the completed state is achieved. * * * If the product is not packaged, the process ends when it is placed into finished goods inventory. If the package is not placed into finished goods inventory prior to shipment, the process ends when the last process prior to loading for shipment has been completed.

As to natural gas specifically, the rule provides the following in pertinent part: "The purchase of fuel, electricity, *gas*, steam, and water that is used or consumed directly in agricultural or industrial production is not taxable." *Id.*, subp. 4a (emphasis added).

The tax court (relying on *Bituminous Roadways, Inc. v. Commissioner of Revenue*, 324 N.W.2d 799 (Minn.1982)) held that the fuel consumed in the compressors was exempt under the industrial production exemption because the fuel is consumed in a step of the natural gas production process. In *Bituminous Roadways* we determined that the item purchased must be acted upon in some way in order

to qualify for the industrial production exemption. *Id.* at 801. The tax court reasoned that a series of processes including pressure regulation and the removal of impurities must occur in the process of refining the gas to make it "customer ready," and those refining steps "act upon" the gas. The court thus concluded that Great Lakes is "engaged in a limited form of production by refining natural gas at its compressor stations" and that the compressor fuel is consumed in connection with that processing.

Testimony of Great Lakes's witnesses support the tax court's findings. One expert testified that burning compressor fuel is necessary for the constant refinement of the gas in the gas pipeline. The expert further testified that "the processing of natural gas is a continuous process" beginning at extraction from the ground and ending with delivery to the end customer and that the compressors are an integral part of the processing and production. Two witnesses testified that the quality of the gas improves as it flows through the compressor stations along the pipeline.

The commissioner contends that the industrial production exemption does not apply because the primary purpose of the fuel consumption is to transport gas and that transporting the gas has only an incidental and insignificant effect on the composition of the gas. The commissioner relies on *Questar Data Systems, Inc. v. Commissioner of Revenue*, 549 N.W.2d 925 (Minn.1996) to argue that the essence of the activity—transportation rather than industrial production—should determine whether the exemption applies. Reliance on *Questar* is misplaced however, because in *Questar* we examined the "essence of the transaction" to determine whether a taxpayer's activity fell within the statutory definition of "use"—not to determine whether the essence of an activity fits within a statutory exemption. *See Ques-*

*tar*, 549 N.W.2d at 928. Moreover, the purpose of the industrial production exemption is "to avoid 'tax on a tax' situations by postponing imposition of all sales taxes until the final sale of the finished product." *Safco Prods. Co.*, 266 N.W.2d at 877. Here the exemption serves to avoid double-taxing by postponing taxation until the final sale to the end consumer.

The tax court's conclusion that the consumption of compressor fuel is a step in the production of consumer ready natural gas is amply supported by the testimony of Great Lakes's witnesses describing the gas refining process that occurs in the compressor stations. We affirm the ruling of the tax court that the use of the natural gas to fuel the compressors is exempt from use tax under Minn.Stat. § 297A.25, subd. 9 as a part of industrial production of goods to be sold ultimately at retail.[8]

Affirmed.

LANCASTER, J., took no part in the consideration or decision of this case.

---

**8.** Because we affirm the tax court's decision on the industrial production exemption, we need not address the constitutional issues raised in Great Lakes's appeal.