#27152, #27166-a-SLZ

**2015 S.D. 69**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

NORTHERN BORDER
PIPELINE COMPANY,                                    Appellee,

v.

SOUTH DAKOTA
DEPARTMENT OF REVENUE,                               Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK BARNETT
Judge

* * * *

SANDRA HOGLUND HANSON
CATHERINE A. TANCK of
Davenport, Evans, Hurwitz & Smith, LLP
Sioux Falls, South Dakota                Attorneys for appellee.


JOHN T. RICHTER
South Dakota Department of Revenue
Pierre, South Dakota                     Attorneys for appellant.


* * * *

ARGUED ON
MARCH 24, 2015

OPINION FILED **08/05/15**

#27152, #27166

ZINTER, Justice

[¶1.]     Northern Border Pipeline Company operates an interstate pipeline business that provides transportation services to natural gas owners who desire to ship their gas. The South Dakota Department of Revenue (Department) assessed Northern Border for use tax on the value of the shippers' gas that the shippers allowed Northern Border to burn as fuel in compressors that moved the gas through the pipeline. The assessment was affirmed following an administrative hearing, but the circuit court reversed, holding that a tax exemption applied. The Department appeals, arguing that the exemption did not apply. By notice of review, Northern Border raises a number of additional issues, including the contention that the burning of the shippers' gas was not a taxable "use" by Northern Border. We conclude that there was no taxable "use" by Northern Border because the gas was owned by the shippers.

*Facts and Procedural History*

[¶2.]     Northern Border operates an interstate natural gas pipeline that extends from Monchy, Saskatchewan, through South Dakota, to North Hayden, Indiana. The Federal Energy Regulatory Commission (FERC) regulates interstate pipeline businesses. Under the federal regulatory scheme, Northern Border is a "transportation-only" pipeline, meaning that it cannot own the gas it transports in the pipeline. *See infra* ¶ 14. Northern Border is also bound by the terms of its FERC tariff. The tariff identifies the transportation services that Northern Border can offer and the rules under which it provides those services to shippers, the owners of the gas.

[¶3.]        Northern Border is authorized to provide different kinds of transportation services.  For each type of service, the shipper designates the quantity of gas it desires to be transported through the pipeline.  The gas is then delivered to Northern Border at a receipt point and returned to the shipper at a delivery point.  No gas enters the pipeline in South Dakota.

[¶4.]        Pressure is required to move the gas through the pipeline.  To maintain pressure, gas is continuously routed through compressors located at stations along the pipeline.  At each compressor station, the gas is compressed and then returned to the pipeline.  There are three compressor stations in South Dakota.

[¶5.]        Although nearly all of the gas routed through the compressors returns to the pipeline, some of the shippers' gas is burned as fuel to operate the compressors.  The gas burned to fuel the compressors is part of what is known as "company use gas."[1]  Northern Border does not buy company use gas from shippers.  Pursuant to the tariff, shippers must allow their gas to be burned as a condition of receiving Northern Border's pipeline transportation services.  However, shippers retain title to the gas throughout the transportation process.

[¶6.]        The Department audited Northern Border's business activities for the period from July 2007 through December 2010.  The Department issued a certificate of assessment for use tax on the value of the shippers' gas that was burned in the

---

1.    Company use gas also includes gas burned to heat the compressor buildings, provide hot water, and test the gas.  "Lost gas" is another component of company use gas.

compressors.[2] Northern Border contested the assessment and requested an administrative hearing. Following a hearing, an administrative law judge issued a proposed decision affirming the assessment. The proposed decision was adopted by the Department Secretary, and Northern Border appealed to the circuit court. The circuit court reversed the assessment. The court ruled that Northern Border's burning of the shippers' gas was exempt from use tax under SDCL 10-46-55, which exempts "[t]he provision of natural gas transportation services by a pipeline."

[¶7.]    The Department appeals the circuit court's exemption ruling. By notice of review, Northern Border challenges the tax, raising the following four issues:[3]

> Whether Northern Border's burning of the shippers' gas was subject to use tax under SDCL 10-46-2.
>
> Whether the imposition of use tax was pre-empted by federal law.
>
> Whether the imposition of use tax interfered with interstate commerce.
>
> Whether the assessment was erroneous due to factual and legal errors.

*Decision*

[¶8.]    The Department argues that the circuit court erred in holding that the pipeline-transportation-services exemption applied to the burning of shippers' gas.

---

2.    The assessment was in the amount of $5,760,120.25 ($4,160,745.59 in tax and $1,599,374.66 in interest).

3.    The circuit court did not rule on these issues. The court's memorandum decision reflects that it proceeded "directly to Northern Border's argument that 'compressor gas' . . . [was] entirely exempt[,]" thereby rendering the other issues moot.

"To be exempt, the activity must first be taxable." *Magellan Pipeline Co., LP v. S.D. Dep't of Revenue & Regulation*, 2013 S.D. 68, ¶ 36, 837 N.W.2d 402, 411, *reh'g denied* (Oct. 22, 2013) (Konenkamp, J., dissenting). *See also N. Border Pipeline Co. v. Comm'r of Revenue*, Nos. A08-0309, A08-0310, 2009 WL 173959, at *4 (Minn. Ct. App. Jan. 27, 2009) (concluding in a similar pipeline-compressor-gas case that "a court naturally determines whether the use tax applies before it determines whether an exemption applies. A thing can be exempted from a tax only if it is initially among the class of taxable things."). Therefore, we first consider whether the activity was a taxable event; i.e., whether Northern Border's burning of the shippers' gas was subject to use tax under SDCL 10-46-2.[4]

[¶9.] "'Whether a statute imposes a tax under a given factual situation is a question of law reviewed de novo[,] and thus no deference is given to any conclusion reached by the Department of Revenue or the circuit court.'" *Magellan*, 2013 S.D. 68, ¶ 7, 837 N.W.2d at 404 (quoting *TRM ATM Corp. v. S.D. Dep't of Revenue & Regulation*, 2010 S.D. 90, ¶ 3, 793 N.W.2d 1, 3). "Statutes [that] impose taxes are to be construed liberally in favor of the taxpayer and strictly against the taxing body."

---

4. The Department also suggests that the burning was taxable under SDCL 10-46-3 and SDCL 10-46-4. SDCL 10-46-3 imposes an excise tax "on the privilege of the use, storage or consumption in this state of tangible personal property . . . not originally purchased for use in this state, but thereafter used, stored or consumed in this state[.]" SDCL 10-46-4 imposes said tax "upon every person using, storing, or otherwise consuming such property within this state until such tax has been paid directly to a retailer or the secretary of revenue as hereinafter provided." The assessment in this case was not based on these statutes, and this argument was not presented below. Therefore, we express no opinion on taxability under those statutes. "We refrain from addressing matters brought for the first time on appeal." *Watertown Co-op Elevator Ass'n v. S.D. Dep't of Revenue*, 2001 S.D. 56, ¶ 11 n.5, 627 N.W.2d 167, 171 n.5.

*Butler Mach. Co. v. S.D. Dep't of Revenue & Regulation*, 2002 S.D. 134, ¶ 6, 653 N.W. 2d 757, 759 (quoting *Robinson & Muenster Assocs., Inc. v. S.D. Dep't of Revenue*, 1999 S.D. 132, ¶ 7, 601 N.W.2d 610, 612). The Department bears the burden of proving the imposition of a tax. *Sioux Valley Hosp. Ass'n v. State*, 519 N.W.2d 334, 335 (S.D. 1994).

[¶10.] SDCL 10-46-2 imposes use tax "on the privilege of the use, storage, and consumption in this state of tangible personal property purchased for use in this state at the same rate of percent of the purchase price of said property as is imposed pursuant to chapter 10-45." There are two requirements for taxability under this statute. First, there must be "use, storage, and consumption in this state of tangible personal property[.]" SDCL 10-46-2. Second, the tangible personal property must be "purchased for use in this state[.]" *Id.*

[¶11.] In this case, we may assume without deciding that the Department proved taxability under the first requirement. There is no dispute that natural gas was "tangible personal property," *see* SDCL 10-46-1(16),[5] and the gas was "consumed" in Northern Border's compressors.[6] The dispositive question is whether the Department also proved taxability under the second requirement.

---

5.    SDCL 10-46-1(16) provides: "'Tangible personal property' [is] personal property that can be seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses if furnished or delivered to consumers or users within this state. The term includes electricity, water, gas, steam, and prewritten computer software."

6.    We note that the "use, storage, and consumption" language in the first requirement is written conjunctively. Because we decide this case on the second requirement, we express no opinion on the effect of the conjunctive language. Instead, for purposes of argument, we accept the Department's

(continued . . .)

[¶12.]	Under the second requirement, the tangible personal property must be "*purchased* for *use* in this state[.]" SDCL 10-46-2 (emphasis added). In this case, Northern Border must be deemed to have "purchased" the gas.[7] A purchase includes "any transfer, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, for a consideration." SDCL 10-46-1(9). Here, the tariff required shippers to allow their gas to be burned in exchange for Northern Border's transportation service. Thus, there was an exchange of power over the gas for consideration.

[¶13.]	The Department also argues that Northern Border's burning of compressor gas was a "use" within the meaning of the second requirement because Northern Border "consumed" the gas to operate the compressors.[8] But unlike the

_____

(. . . continued)
>	assertion that Northern Border's burning of the gas satisfied the first requirement because the burning was "consumption."

7.	The dissent contends that it is "undisputed that the gas was purchased *for use* in this State." Dissent ¶ 27. But Northern Border vigorously disputes that the gas was purchased for *use*. That is the issue in this appeal.

8.	The Department points out that one court has held that the burning of gas to fuel a pipeline compressor was "consumption," which qualified as a taxable "use." *See Great Lakes Transmission L.P. v. Comm'r of Revenue*, 638 N.W.2d 435, 439 (Minn. 2002) ("[C]onsumption qualifies as a type of 'use'[—]indeed, it could well be considered the ultimate use."). The *Great Lakes* decision is not applicable for three reasons. First, the Minnesota Supreme Court's consumption and use language came from the court's analysis of the first requirement, which specifically triggered use tax on the privilege of "using, storing, distributing, or *consuming* . . ." tangible personal property. *See id.* at 438 (emphasis added). But the first requirement is not at issue in Northern Border's case. Second, the comparable Minnesota requirement was much broader than South Dakota's second requirement. The comparable Minnesota requirement specifically taxed the privilege of using tangible personal property "*purchased for* use, storage, distribution, *or consumption.*

(continued . . .)

first requirement that specifically triggers tax liability for "consumption," there is no "consumption" language in the second requirement of SDCL 10-46-2. More importantly, the word "use" in the second requirement is specifically defined by statute. A taxable "use" must involve "the exercise of right or power over tangible personal property . . . *incidental to ownership of that property . . . .*" SDCL 10-46-1(17) (emphasis added). Therefore, the question is whether Northern Border's "exercise of right or power over" the gas was "incidental to [Northern Border's] ownership of that property." *See id.*[9]

---

(. . . continued)

> . . ." Minn. Stat. § 297A.14, subd. 1 (1998) (emphasis added), *repealed by* Laws 2000, c. 418, art. 1, § 45; *see also Great Lakes*, 638 N.W.2d at 438. South Dakota's second requirement does not contain Minnesota's more inclusive "or consumption" language. *See id.;* SDCL 10-46-2. Finally, and most importantly, in interpreting the definition of "use," the Minnesota Supreme Court did not consider language like that in South Dakota's statutory definition of "use," which specifically requires that "the exercise of right or power over tangible personal property [be] . . . incidental to ownership of that property[.]" SDCL 10-46-1(17). As we later explain, this definition of "use" is critical because both the statute and our cases interpreting the statute require that the taxpayer own the personal property. *See infra* ¶ 14.

9.    The dissent contends that there is nothing in the phrase "purchased for use" that "implicates the statutory definition of 'use' under SDCL 10-46-1-(17)." Dissent ¶ 25. This contention disregards the meaning of the prepositional phrase "purchased for use" in SDCL 10-46-2. The word "purchased" is the preposition and the word "use" is the object of the prepositional phrase "purchased for use." Because "use" is the object, the phrase "purchased for use" directly implicates "use." Moreover, in declaring the meaning of a statute, a court is not free to disregard legislative definitions of words. We have long held that "whenever the meaning of a word or phrase is defined in any statute such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears." *State v. Howell*, 77 S.D. 518, 523, 95 N.W.2d 36, 39 (1959). Here, the Legislature has not plainly indicated that the definition of the word "use" should not be applied in SDCL 10-46-2, the use tax statute. On the contrary, the introductory clause

(continued . . .)

[¶14.] We conclude that Northern Border did not burn the shippers' gas incidental to Northern Border's ownership. This conclusion is compelled under the tariff, federal law, and the evidence. Under the tariff and federal law, Northern Border did not own—indeed, it was prohibited from owning—the gas it burned in the compressors. Instead, the shippers retained title to and ownership of the gas throughout the entire transportation process. Northern Border retained mere possession and custody. *See* 15 U.S.C. § 717(a) (2006) (granting FERC regulatory control over interstate, natural gas pipelines); *Sebring Util. Comm'n v. FERC*, 591 F.2d 1003, 1016 (5th Cir. 1979) (mentioning that the interstate pipeline company merely transported gas owned by two shippers); *In re ConocoPhillips Co.*, 138 FERC 61004, 61005, 2012 WL 75373, at *5 (2012) ("Although the specific language of each interstate pipeline's tariff varies, the Commission has made clear that the shipper of record and the owner of the gas must be one and the same throughout the course of the transportation or the duration of storage on any pipeline."); *Enron Energy Servs., Inc.*, 85 FERC 61221, 61906, 1998 WL 790795, at *1 (1998) ("[L]ongstanding Commission policy also requires that the shipper must continue to hold title to the gas throughout the entire course of the transportation of the gas."); *Consol. Gas Transmission Corp.*, 38 FERC P 61150, 61408, 1987 WL 116152, at *24 (1987)

---

(. . . continued)

of SDCL 10-46-1 directs that the definition of "use" in SDCL 10-46-1(17) is to be applied throughout SDCL ch. 10-46. "'It is elementary that in construing a constitutional or statutory provision the words must be taken, in their usual and ordinary sense, unless there is a constitutional or statutory definition of the word.'" *Bandy v. Mickelson*, 73 S.D. 485, 490-91, 44 N.W.2d 341, 343 (1950) (quoting *Christopherson v. Reeves*, 44 S.D. 634, 184 N.W. 1015, 1017 (1921). Thus, "we must accept the definition [of the word 'use'] as contained in [SDCL 10-46-1(17)]." *See id*. at 492, 44 N.W.2d at 344.

(citing *Tex. E. Transmission Corp.*, 37 FERC P 61260, 61683-85, 1986 WL 215099, at \*30-33 (1986)) ("To prevent capacity brokering, [FERC] therefore required that all shippers shall have title to the gas at the time the gas is delivered to the transporter and while it is being transported by the transporter."). The evidence introduced at the administrative hearing was consistent with these rules. Northern Border presented unrefuted testimony that it did not own the gas burned in the compressors.[10]

[¶15.] Because Northern Border did not own the gas, use tax may not be imposed under this Court's precedents. In *Hallett Constr. Co. v. State ex rel. Gillis*, we considered the "incidental to ownership" requirement in the materially identical predecessor to SDCL 10-46-1(17).[11] 80 S.D. 68, 74, 119 N.W.2d 117, 121 (1963). Considering the "incidental to ownership" language, this Court stated that "the clear wording of the statute [defining 'use'] limits its scope to a use [of property] incident to ownership[.]" *Id.* Because we found that the taxpayer in *Hallett* actually purchased and owned the property used, we held that it was a taxable use. *Id.*

---

10. The Department argues that Northern Border owned the gas because it possessed it. The Department, however, cites no authority for the proposition that possession is equivalent to ownership. We reject this argument. Obviously, one may possess property owned by another. One may also consume property belonging to another.

11. *See* SDC 1960 Supp. 57.4302(2), which provided: "'Use' means and includes the exercise of right or power over tangible personal property incidental to the ownership of that property, except that it shall not include the sale of that property in the regular course of business." *Hallett*, 80 S.D. at 74, 119 N.W.2d at 121.

[¶16.]		Shortly after *Hallett*, the Legislature enacted SDCL 10-46-5, a statute

that imposed use tax on contractors (and only contractors) for the use of property

that was not owned by the contractor. *See* 1966 S.D. Sess. Laws ch. 256.[12]  In a

subsequent case interpreting this new statute, we illustrated the significance of the

"incidental to ownership" language. *See Friessen Constr. Co. v. Erickson*, 90 S.D.

60, 62, 238 N.W.2d 278, 279 (1976).  We first noted that SDCL 10-46-5 imposed the

tax "whether title to such property be in the contractor or any other person[,]" and

therefore, the language of the new statute taxed the use of materials the contractors

did not own. *Id.*  We then compared the language of SDCL 10-46-5 with the

statutory definition of "use" (at that time SDCL 10-46-1(2)).[13]  *See id.* at 63-65, 238

N.W.2d at 279-80.  In comparing the language, we observed that the two statutes

conflicted.  "[T]here is an irreconcilability between the statutes . . . as to whether a

contractor may be subject to a use tax on property *owned by* [another entity]." *Id.*

at 64, 238 N.W.2d at 280 (emphasis added).  We noted that if the statutory

definition of "use" now found in SDCL 10-46-1(17) applied, it would make the tax

impermissible because the contractors did not "use" the property "incidental to

---

12.	The 1966 version of the statute provided in relevant part:

> Where a contractor . . . uses tangible personal property in the
> performance of his contract . . . whether the title to such
> property be in the contractor . . . or any other person, or whether
> the titleholder of such property would be subject to pay the sales
> or use tax, such contractor . . . shall pay a tax at the rate
> prescribed by [SDCL 10-45-2.]

1966 S.D. Sess. Laws ch. 256.

13.	The definition of "use" was the same as it is today, but it was codified at
	SDCL 10-46-1(2). *Compare* SDCL 10-46-1(2) (1967) *with* SDCL 10-46-1(17).

ownership." *See id.* But we held that the use tax could be imposed—even though the contractors did not own the property—because SDCL 10-46-5 was the latter enactment, *see id.*, and it specifically allowed for the imposition of the contractors use tax "whether the title to such property be in the contractor . . . or any other person." *See id.* at 63, 238 N.W.2d at 279-80. However, we cautioned that the incidental to ownership requirement of the current, definitional statute still applied to the other sections of the tax law, and it "retain[ed] its validity in any situation not set out in SDCL 10-46-5." *Id.* at 65, 238 N.W.2d at 280.

[¶17.]     Today's case does not involve the use tax set out in SDCL 10-46-5. Therefore, under SDCL 10-46-1(17), *Friessen*, and *Hallett*, Northern Border had to own the gas for use tax to be imposed under SDCL 10-46-2.[14] *See Friessen*, 90 S.D. at 64-65, 238 N.W.2d at 280; *Hallett*, 80 S.D. at 74, 119 N.W.2d at 121. But Northern Border did not own the gas burned in the compressors. Because any "use" of tangible personal property must, by statutory definition, be incidental to ownership of the property, Northern Border did not "use" the gas within the meaning of the second requirement in SDCL 10-46-2.[15]

---

14. The dissent contends that *Hallet* and *Friessen* support utilization of the statutory definition of "use" the first time that word is used in SDCL 10-46-2 but not the second. Dissent ¶ 25 n.18. We disagree. We are not at liberty to selectively employ the definition of "use" in one part of the statute and then disregard it the second time it is used in the same sentence. *See Howell*, 77 S.D. at 523, 95 N.W.2d at 39.

15. The dissent contends that "the words 'purchased for use in this state' are clear and require no construction." Dissent ¶ 25. We agree. The question in this case is a matter of interpretation of words rather than utilizing canons of construction. *See* Norman Singer & Shambie Singer, Sutherland Statutes & Statutory Construction § 45:4 (7th ed. 2014) (hereinafter "Sutherland")

(continued . . .)

[¶18.] The Department, however, contends that burning shippers' gas should be taxable under the reasoning utilized in two Minnesota cases, *Great Lakes Transmission L.P. v. Commissioner of Revenue*, 638 N.W.2d 435 (Minn. 2002); and *Northern Border Pipeline Co. v. Commissioner of Revenue,* 2009 WL 173959 (Minn. Ct. App. 2009). The Department's reliance on those cases is misplaced. In both cases, Minnesota sought to impose a use tax on gas burned in pipeline compressors. In *Great Lakes*, the Minnesota Supreme Court found there was a taxable use, but the court held that "the use of the natural gas to fuel the compressors [was] exempt from use tax under Minn. Stat. § 297A.25, subd. 9 as a part of industrial production of goods to be sold ultimately at retail." 638 N.W.2d at 441. Following the *Great*

---

(. . . continued)

("[I]nterpretation is 'the art of finding out the true sense of any form of *words*; that is, the sense which the author intended to convey, and of enabling others to derive from them the same idea which the author intended to convey,' and 'construction is the drawing of *conclusions respecting subjects that lie beyond the direct expression of the text*, from elements known from and given in the text.'" (emphasis added) (quoting Francis Lieber, Legal and Political Hermeneutics, or Principles of Interpretation and Construction in Law and Politics 289 app. (William G. Hammond ed., 3d ed., St. Louis, F.H. Thomas & Co. 1880)); *See also* Bryan A. Garner, Garner's Dictionary of Legal Usage 473-74 (3d ed. 2011). Here, the statute directly expresses that the "purchase" be for "use," and the word "use" is defined in the text. Because the Legislature has specifically defined the word "use," we do not engage in statutory construction. We merely "declare the meaning" of the word "use" as it has been "clearly expressed" by the Legislature's definition, which directs that the definition be used throughout SDCL chapter 10-46. *See Magellan*, 2013 S.D. 68, ¶ 9, 837 N.W.2d at 404; SDCL 10-46-1. The dissent resorts to statutory construction because the dissent is entirely premised on its conclusion that the statutory definition of "use" does not apply, even though the word "use" is in the second requirement of the statute and SDCL 10-46-1 requires that this statutory definition be applied wherever the word is found in SDCL ch. 10-46. The dissent's premise is a conclusion relating to a subject that "lie[s] beyond direct expression of the text." *See* Sutherland, *supra* note 15, § 45:4.

*Lakes* decision, the Minnesota legislature amended the statute and "explicitly excluded the transportation of natural gas from [the] industrial production [exemption]." *N. Border*, 2009 WL 173959, at \*2. The Department points out that South Dakota has no industrial-production exemption. Therefore, the Department argues that the Minnesota use tax is substantially similar to South Dakota's, and use tax should be imposed under the initial *Great Lakes* reasoning, finding that the burning of compressor gas was a taxable use.

[¶19.]    However, Minnesota's statutory scheme is broader. It imposes use tax on the use of property when title *or possession* is transferred. In contrast, South Dakota's statutory scheme requires *ownership* of the property. *Compare* SDCL 10-46-2 & SDCL 10-46-1(17) *with* Minn. Stat. § 297A.14, subd. 1 (1994) & Minn. Stat. § 297A.01 and subd. 3 (1994); *see also Great Lakes*, 638 N.W.2d at 439; *N. Border*, 2009 WL 173959, at \*7-8. As previously noted, this distinction is significant because SDCL 10-46-1(17) has always required ownership as an explicit and essential requirement of imposing use tax under SDCL 10-46-2. *See Friessen*, 90 S.D. at 64-65, 238 N.W.2d at 280; *Hallett*, 80 S.D. at 74, 119 N.W.2d at 121. Although other states also utilize the broader Minnesota "ownership or possession" language,[16] South Dakota has retained its narrower statutory definition requiring

---

16.    Other States also do not require "ownership" of the tangible personal property. Mere possession or custody is sufficient. *See, e.g.*, Neb. Rev. Stat. § 77-2701.42 (emphasis added) ("'Use' means the exercise of any right or power over property incident to the ownership *or possession* of that property[.]"); N.D. Cent. Code § 57-40.2-01(8) (emphasis added) ("'Use' means the exercise by any person of any right or power over tangible personal property incident to the ownership *or possession* of that property[.]"); Wyo. Stat. § 39-16-101(ix) (emphasis added) ("'Use' means the exercise of any right or power over

(continued . . .)

-13-

ownership. *See* SDCL 10-46-1(17). Therefore, the Minnesota cases are not useful in the analysis.

[¶20.] An Arizona case is more on point. *Val-Pak East Valley, Inc. v. Arizona Department of Revenue*, 272 P.3d 1055 (Ariz. Ct. App. 2012), involved use tax under a statute that required use incidental to ownership. The Arizona Court of Appeals concluded: "Although the use tax statute does not define or describe the meaning of the phrase 'incidental to owning the property,' on its face this wording requires the exercise of a right or power that one has to tangible personal property *by virtue of owning it.*" *Val-Pak*, 272 P.3d at 1061 (emphasis added). The court further stated that it could not "gloss over the statutory requirement that a taxpayer's use must be incidental to owning the property." *Id.* at 1061-62. The court finally noted that if Arizona's use-tax statute or the definition of "use" contained language that allowed for the imposition of use tax when a taxpayer had possession, the Department's "argument would have more force." *Id.* at 1062 n.7.

[¶21.] Here, SDCL 10-46-1(17) requires ownership, not mere possession, and Northern Border did not own the gas. We cannot "gloss over the statutory requirement that a taxpayer's use must be incidental to owning the property."[17]

---

(. . . continued)

tangible personal property *incident to ownership or by any transaction where possession is given by lease or contract*[.]"); Wis. Stat. § 77.51(22)(a) (emphasis added) ("'Use' includes the exercise of any right or power over tangible personal property . . . *incident to the ownership, possession or enjoyment of the property*[.]").

17. The dissent's central thesis is that the tax "arises out of Northern Border's *privilege of consuming*" the gas. Dissent ¶ 28. But to reach that conclusion, the dissent is adding the words "or consumption" to the second statutory

(continued . . .)

*See Val-Pak*. at 1061-62. We conclude that under the current statutory definition of "use," Northern Border's burning of gas owned by others was not taxable under SDCL 10-46-2. In light of this holding, we do not reach the other issues raised by the parties. We affirm the circuit court's judgment reversing the Department's assessment.

[¶22.]        GILBERTSON, Chief Justice, and WILBUR, Justice, concur.

[¶23.]        SEVERSON and KERN, Justices, dissent.


KERN, Justice (dissenting).

[¶24.]        This Court should reverse the circuit court and affirm the assessment imposed by the Department. The majority opinion, relying on *Hallett, Friessen*, and SDCL 10-46-2, holds that "Northern Border had to own the gas for use tax to be imposed." *See supra* majority opinion ¶ 17. SDCL 10-46-2 provides that "[a]n excise tax is hereby imposed on the privilege of the use, storage, and consumption in this

_____

(. . . continued)
requirement. Indeed, this is exactly how the Minnesota Legislature made the burning of compressor gas taxable. As we previously noted, the comparable Minnesota requirement specifically taxed the privilege of using tangible personal property "*purchased for use*, storage, distribution, *or consumption* . . . ." Minn. Stat. § 297A.14, subd. 1 (1998) (emphasis added), *repealed by* Laws 2000, c. 418, art. 1, § 45; *see also Great Lakes*, 638 N.W.2d at 438. Minnesota still utilizes the broader "purchased for use, storage, distribution, *or consumption*" language to the present day. Minn. Stat. § 297A.63, subd. 1(a) (2012) (emphasis added). The South Dakota second requirement does not contain the more inclusive Minnesota "or consumption" language. *See* SDCL 10-46-2. Although Minnesota taxes this transaction through broader statutory language, "this Court cannot 'add modifying words to the statute or change the terms.'" *Rabenberg v. Rigney*, 1999 S.D. 71, ¶ 9, 597 N.W.2d 424, 426 (quoting *City of Sioux Falls v. Ewoldt*, 1997 S.D. 106, ¶ 13, 568 N.W.2d 764, 767)).

state of tangible personal property purchased for use in this state at the same rate of percent of the purchase price of said property as imposed pursuant to chapter 10-45." The majority opinion divides the taxability under this statute into two requirements: (1) evidence that there is "use, storage, and consumption in this state of tangible personal property," and (2) evidence that the tangible personal property was "purchased for use in this state[.]"

[¶25.]        I agree with the majority opinion's assumption that the Department proved that gas is tangible personal property and Northern Border consumed it in South Dakota. *See supra* majority opinion ¶ 11. I disagree, however, that the phrase—"*purchased for use* in this state"—implicates the statutory definition of "use" under SDCL 10-46-1(17). Northern Border does not claim that SDCL 10-46-2 is ambiguous. Therefore, under our rules of statutory interpretation, this Court's *only* function is to declare the meaning of the statute as clearly expressed. *Magellan Pipeline Co.*, 2013 S.D. 68, ¶ 9, 837 N.W.2d at 404. Here, the words "purchased for use in this state" are clear and require no construction. The "for use" is connected to the "purchase," not the taxpayer's privilege of the "use, storage, and consumption of tangible personal property."[18] *See* SDCL 10-46-2. The crux of the analysis, therefore, is whether the gas was "purchased for use in this state," not whether Northern Border's *use* (as defined by SDCL 10-46-1(17)) of the gas in this state was incidental to its ownership of the gas.

---

18.    *Hallett*, 80 S.D. 68, 119 N.W.2d 117 and *Friessen*, 90 S.D. 60, 238 N.W.2d 278 support that the statutory definition of "use" is implicated in assessing the *taxpayer's "privilege* of the use, storage, and consumption of tangible personal property" and not "use" in relation to "purchase." *See* SDCL 10-46-2 (emphasis added).

[¶26.]     To conclude otherwise is to engage in statutory construction. Indeed, in construing the phrase "purchased for use in this state," the majority opinion goes beyond the direct text and draws the conclusion that the Legislature intended the "use" in "purchased for use in this state" to mean the same thing as the "use" in "use, storage, and consumption[.]" *See supra* majority opinion ¶ 17 n.15 (explaining the difference between statutory interpretation and construction). Yet, the majority opinion specifically notes that South Dakota's statute does not contain the words "storage" or "consumption" in relation to the purchase. *See supra* majority opinion ¶ 21 n.17. Thus, to reach its conclusion, the majority opinion must consider subjects that lie beyond the plain and direct textual expression. *See id.* ¶ 19 (distinguishing Minnesota statute that contains the phrase "purchased for use, storage, distribution, or consumption").

[¶27.]     Taking the words in their ordinary and usual sense, on the other hand, is simply interpreting the statute as expressed—is there a purchase of gas for use of that gas in this state? Under the facts before this Court, it is undisputed that there is a purchase. Indeed, as the majority opinion notes, there was an exchange for consideration and "the tariff required shippers to allow *their* gas to be burned[.]" *See supra* majority opinion ¶ 12 (emphasis added). It is further undisputed that the gas was purchased *for use* in this State. "[T]he tariff required shippers to allow *their* gas to be burned in exchange for Northern Border's transportation service." *Id.* (emphasis added). Thus, Northern Border's privilege of consuming tangible personal property (gas) purchased (exchange for consideration) by the shippers for use in this State (the three compressor stations in South Dakota) is a taxable event.

[¶28.] Furthermore, the circuit court erred when it held that the exemption under SDCL 10-46-55 applies. "Statutes exempting property from taxation should be strictly construed in favor of the taxing power." *Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc. v. S.D. Dep't of Revenue*, 2002 S.D. 145, ¶ 5, 654 N.W.2d 779, 782 (quoting *In re Sales & Use Tax Refund Request of Media One, Inc.*, 1997 S.D. 17, ¶ 9, 559 N.W.2d 875, 877). The plain language of SDCL 10-46-55 exempts a specific service: "The provision of natural gas transportation services by a pipeline is exempt from the provisions of this chapter and from the computation of the tax imposed by this chapter." Yet, here, the excise tax arises out of Northern Border's *privilege* of *consuming* gas purchased for use in South Dakota. *See* SDCL 10-46-2. The tax is not being imposed because Northern Border is providing a service to the shippers. *See, e.g.*, *Magellan*, 2013 S.D. 68, ¶¶ 12-14, 837 N.W.2d 405-06 (discussing the exemption of pipeline services). Because the tax imposed under SDCL 10-46-2 arises out of Northern Border's consumption of tangible personal property, and not its natural gas transportation service, SDCL 10-46-55 does not apply.

[¶29.] For these reasons, I respectfully dissent.

[¶30.] SEVERSON, Justice, joins this dissent.